408 A.2d 864
**COMMONWEALTH of Pennsylvania**
v.
**Richard BOLDEN, Appellant.**
Superior Court of Pennsylvania.
Argued May 7, 1979.
Filed Aug. 15, 1979.
Petition for Allowance of Appeal Denied Oct. 26, 1979.

432

434

John L. Doherty, Pittsburgh, for appellant.

Paul M. Petro, Assistant District Attorney, Washington, for Commonwealth, appellee.

Before VAN der VOORT, LARSEN and LAVELLE, JJ.*

LAVELLE, Judge:

After a jury trial, appellant was convicted of first degree murder and robbery of Robert Indyk. This appeal followed sentencing by the trial court.

At trial, Michael Romano testified that he was originally part of a conspiracy with appellant and John Nastari and that he accompanied Nastari and appellant to the Indyk quarry site shortly before the murder, for the purpose of viewing the premises. Romano withdrew from the group's plans after that trip and before January 10, 1972 when Robert Indyk was robbed and killed.

At appellant's trial in July of 1977, Romano testified that on the day following the murder and robbery, he visited Nastari, appellant's co-conspirator, at his farm, and while he was there Nastari asked him to get rid of some .22 caliber long rifle shells. Romano testified that he disposed of them on his way home.

He also testified that on the next day, January 12, 1972, he went to Nastari's barber shop and that the following conversation occurred: (Tr. p. 90)

*"Q. What was that conversation?*

*A. I said 'I noticed in the paper where Indyk was hit.' That means shot, killed. He says 'I don't know anything about it, don't want to talk about it' and I told him, I says 'I told you that that was a bad deal.' I says 'What did you get out of it?' He says 'Bolden gave me a bum steer, took me down there and all I come out of it with was $400.00.' I said 'Well, what happened' and he said 'The man fought like a tiger.' "*

Romano testified that about a week later he again visited Nastari at his farm and inquired about a .22 caliber pistol, the barrel of which Romano had shortened for Nastari. Romano testified that he asked him what he did "with the

---

* Justice Rolf Larsen of the Supreme Court of Pennsylvania and Judge John E. Lavelle of the Court of Common Pleas of Schuylkill County, Pennsylvania, are sitting by designation.

equipment, items used at that time which I referred to (the robbery and murder) and he said the best way to get rid of things was to put a torch to it." Romano testified that Nastari's barn contained acetylene tanks and torches.

The trial court admitted the conversations into evidence, ruling that they constituted the admissions of a co-conspirator during the continuation of the conspiracy and that they were also admissible on the basis that the statements were against Nastari's penal interest. The Commonwealth contended that the conspiracy extended beyond the robbery and murder and continued to conceal the evidence of the crime. During the visit of Romano to Nastari, the day after the murder, the latter enlisted Romano's aid in disposing of some cartridges of the same caliber as those used to kill Indyk. And upon the third visit by Romano, Nastari was observed painting the vehicle used to a different color.

In *Commonwealth v. Wilson*, 394 Pa. 588, 607, 148 A.2d 234, 244 (1959) the court said:

> "The Commonwealth urges that even though the specific conspiracy between Thomas, DeMoss, Ellsworth and appellant was to rob Mrs. Rossman and that during the commission of this robbery the murder occurred, yet that specific conspiracy was but an integral part of a broader conspiracy which included disposition of the proceeds of the robbery, concealment of the crime and fabrication of evidence as a defense and that such concealment proved unsuccessful. The declarations or acts of one conspirator made to third parties in the absence of his co-conspirator are admissible in evidence against both provided that such declarations were made during the conspiracy and in furtherance of the common design. Commonwealth v. Spardute, 278 Pa. 37, 49, 122 A. 161; Commonwealth v. Biddle, 200 Pa. 640, 645, 50 A. 262; Heine v. Commonwealth, 91 Pa. 145, 148; Commonwealth v. Jermyn, 101 Pa.Super. 455, 471.
>
> "An examination of the record indicates that the Commonwealth produced sufficient evidence from which the jury were justified in finding the existence of a conspir-

*acy; acts and declarations of the co-conspirators, even in the absence of appellant, were admissible, and testimony as to the actions of the co-conspirators, even after the robbery and homicide had taken place, was properly admitted in evidence. Neither in the admission of evidence in this respect, nor in the court's instructions to the jury on this subject can we find error on the part of the trial court."*

■ In the instant case, the trial court properly found from the evidence that a conspiracy existed between appellant and Nastari for the commission of the robbery, which resulted in the murder, and that the conspiracy extended to the concealing and destruction of evidence of their implication. All of the statements complained of on appeal were made by one of the co-conspirators within a period of one and one-half weeks of the murder to one who was originally asked to participate in the conspiracy and who was familiar with the arrangements made. All of the statements were made prior to the completion of the painting of the car used, changing its color from white to green.

■ The statements made January 12, 1972 were clearly against Nastari's penal interest. After his attention was directed by Romano's inquiry to the Indyk killing and the question raised of what he got out of it, he complained that he only got $400.00 and that Indyk fought like a tiger. Such an admission places him at the scene at the time of the robbery and murder and shows he participated in the proceeds of the crime. The statement was clearly against his penal interest. The statement made by Nastari a week and a half later was equally against his penal interest because it shows his destruction of evidence which would link him to the killing.

Hence, the statements of Nastari were properly admitted into evidence as declarations of a co-conspirator made during the conspiracy and in furtherance of its common purpose, *Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972); *Commonwealth v. Wilson*, supra, and/or they were properly admitted as statements made against Nastari's penal interest, *Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d

344 (1974); *Commonwealth v. Warren*, 250 Pa.Super. 522, 378 A.2d 1271 (1977).

 Defense called a witness, Colville, to testify as to the bad reputation of a Commonwealth witness for honesty and truthfulness. On cross-examination the prosecutor asked Colville if he was aware that the Commonwealth witness had given testimony in a Federal Court in a perjury prosecution and that the defendant in the Federal prosecution had been convicted. Defense counsel immediately objected and requested a mistrial, and the trial court refused the mistrial and sustained the objection, cautioning the jury to disregard any evidence to the verdict in the Federal case, thus obviating any prejudice that might have been visited upon the defendant by the question.

 Appellant objected to the prosecutor developing testimony that one of the Commonwealth witnesses, Darcy, was in fear of his life. In connection with the testimony of Michael Romano, the court had cautioned the prosecutor to avoid testimony about the witness' fear for his life. Later in the trial, the Commonwealth called a state trooper to explain why the witness Darcy had not been placed under surveillance, and he explained that Darcy had not been put under watch because, "the man was in fear of his life." A defense objection to that answer was sustained and the jury was instructed to disregard the trooper's answer. This one brief statement, which gave no details as to why Darcy was in fear of his life, resulted in no prejudice to the defendant.

 Appellant's next assignment of error contends that the prosecutor was guilty of prejudicial misconduct in failing to reveal any bargain that may have been made with Romano in exchange for his testimony. During defense counsel's cross-examination of Romano, the witness denied having made a "deal" with the district attorney whereby unrelated armed robbery charges pending against him would be dropped in return for his cooperation in this case. He admitted he visited the district attorney's office in an effort to have that case postponed, and that it was postponed. He was asked: (Nt. 109, 110)

"Q. And wasn't the reason it was postponed because Mr. Manning said you were cooperating in this case?

A. I think so, yes.

Q. Well, either it was or it wasn't.

A. Yes.

Q. Is that a deal?

A. That's not a deal.

Q. That's not a deal?

A. There was no promises made."

The witness admitted the robbery charges were nol prossed because of his cooperation in the instant case, but he persisted in his statement that no deal was made and that Trooper Manning did not, to his knowledge, intercede for him. The trial judge correctly noted that apparently a semantical problem existed in the mind of the witness with the words "deal" and "intercession." The witness admitted that Trooper Manning interceded for him, but he denies a deal was made because he made no promise to do anything. In any event, no prejudice was suffered by the appellant because the entire conversations relating to the "deal" or "intercession" was placed before the jury by the testimony of John Tighe, the first assistant district attorney of Allegheny County (Tr. 789 et seq.), who was called as a defense witness, and his testimony could be used by the jury in weighing the credibility of Romano's testimony.

Appellant complains on appeal that the prosecutor, in his closing, was guilty of professional misconduct by arguing that there was a burden on the defendant to bring forth witnesses to rebut certain evidence. However, there is nothing in the record that such a statement was made by the prosecutor in his closing. The opinion of the trial court merely indicates that, at some point in the prosecutor's closing, he "instructed the jury that there had been misstatement and correctly related the proper instructions to the jury." Since appellant failed to follow the teachings of *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977) and *Commonwealth v. DelVaccio*, 299 Pa. 547, 149 A. 696 (1930) and place his objection on record during the argument

and request the trial judge to place the remarks on the record as he understood them, he has failed to preserve this contention for appellate review.

Sometime after Donald Darcy had completed his testimony and several other witnesses had been heard, appellant requested that the court review certain of his medical and psychological records to determine whether Darcy was a competent witness. The trial court refused, and his refusal is assigned as error.

■■■ At the time defense counsel made his request, the court had already heard Darcy's testimony, had observed him while he testified at great length, and had the opportunity to compare his testimony with that of other witnesses. In addition, Darcy had been a witness at appellant's first trial. Under the circumstances, it cannot be said that the court erred in concluding that there was no reason to order a competency hearing. The court is not bound to order an examination on the question merely because counsel for the accused requests it, where the court, after hearing the testimony of the witness, has no doubt of the mental soundness of the witness. It is only where a real doubt exists in the mind of the trial judge that it becomes his duty to grant the request. *Commonwealth v. Kosh*, 305 Pa. 146, 157 A. 479 (1931); *Commonwealth v. Barksdale*, 219 Pa.Super. 444, 281 A.2d 703 (1971). We find no abuse of discretion on the part of the trial judge in this matter.

■■■ Appellant complains that the court erred in allowing improper rebuttal when the Commonwealth was permitted to call two state troopers on rebuttal to explain what procedures were performed to insure the accuracy of Donald Darcy's information and to deny a testimony of appellant that he was being framed by Troopers Manning and Dugan. The rebuttal permitted was limited to matters developed by appellant. It is not grounds for reversal that the trial court permitted the Commonwealth to present evidence on rebuttal that could have been presented in its case in chief, *Commonwealth v. Hickman*, 453 Pa. 427, 309 A.2d 564 (1973); *Commonwealth v. Koch*, 446 Pa. 469, 288 A.2d 791 (1972).

During deliberation, the jury requested that the testimony of two witnesses be read back to them, and the court granted the request. Appellant argues that the court erred in doing so. The decision was proper. In *Commonwealth v. Peterman*, 430 Pa. 627, 244 A.2d 723 (1968) the court pointed out that where the jury, in order to refresh its recollection, requests the reading of a portion of the testimony actually given at trial, it is a matter within the discretion of the trial judge whether to grant such a request.

Finally, appellant urges that the trial court erred in denying his motion for change of venue because of alleged inflammatory publicity in three newspaper reports published during the first trial of appellant and one and one-half years before the instant trial, and one report published in a Pittsburgh paper five months before the instant trial. The articles for most part report incidents occurring in open court and do not disclose extra-judicial prejudicial or inflammatory material. An extensive voir dire was conducted of prospective jurors and none were found who were influenced by the articles. We find no abuse of discretion by the trial judge in his refusal to grant appellant's motion for change of venue.

Affirmed.