469 A.2d 1059

**COMMONWEALTH of Pennsylvania**

v.

**Richard SYRE, Appellant.**

Superior Court of Pennsylvania.

Argued March 15, 1983.

Filed Sept. 2, 1983.

Reargument Denied Nov. 10, 1983.

Petition for Allowance of Appeal Granted Feb. 21, 1984.

F. Fitzpatrick, Jr., Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, dated July 9, 1982.

In June of 1980 the appellant, Richard Syre, was a lawyer for Teamsters Local 115, located in Philadelphia. At this time the teamsters were engaged in a campaign to organize workers at the Penn Radio Cab Company. The workers at Penn Radio went out on strike, at the instigation of the union, and set up a picket line. A man by the name of Ezekiel Gibbs opposed the union's efforts and continued to work while other drivers struck. Gibbs drove a cab through a picket line on June 27, 1980 and allegedly was assaulted by several union members. These individuals were arrested and subsequently brought to trial.

While these criminal charges were pending, Gibbs met with a union official to discuss this strike-related incident. Gibbs had sustained economic losses as a result of injury to his teeth and requested compensation in the amount of $2000.00. According to the union, the official made it quite clear that settlement was only for the proposed civil suit which Gibbs had threatened to bring against the union. However, according to Gibbs' version, the official told him that the settlement was for both the civil liability and the withdrawal of criminal charges.

In any event, Gibbs met with the appellant on several occasions during August and September of 1980 regarding this matter. In September, 1980, Penn Radio became aware that Gibbs was considering the withdrawal of criminal prosecution. Gibbs later testified at trial that indeed he did not wish to proceed with the criminal prosecution and was even seriously considering taking the settlement money and leaving town. Penn Radio prevailed upon him not to drop the criminal prosecution but, instead, to go to the Philadelphia District Attorney's Office and become part of an investigation concerning certain union officials. Gibbs did so and on September 22, 1980 he agreed to wear a Nagra tape recorder and to tape his conversations with the appellant and others.

After several conversations had been recorded, the appellant was charged with the offense of tampering with a witness.[1] The appellant was tried before the Honorable Stanley L. Kubacki and a jury and was convicted. Post-verdict motions were argued and denied and the appellant was sentenced to 2 years probation. This appeal followed.

■■■ The appellant alleges, on appeal, that the lower court erred in refusing to grant his demurrer.[2] We address this issue as a sufficiency of the evidence question. The evidence is sufficient if it supports the verdict beyond a reasonable doubt when construed in the light most favorable to the Commonwealth, with all proper inferences drawn in the Commonwealth's favor. *Commonwealth v. Edwards*, 493 Pa. 281, 426 A.2d 550 (1981); *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982).

The offense of tampering with a witness is defined in 18 Pa.C.S.A. § 4907 as follows:

(a) Offense defined.—A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to:

(1) testify or inform falsely;

(2) withhold any testimony, information, document or thing except on advice of counsel;

---

**1.** Act of December 6, 1972, P.L. 1482, No. 334, Sec. 1, 18 Pa.C.S.A. § 4907. This offense was repealed by the Act of December 4, 1980, P.L. 1097, No. 187, Sec. 2, effective in 60 days. The offense is now captioned "Intimidation of witnesses or victims" and appears at 18 Pa.C.S.A. § 4952. *See: Commonwealth v. Vitacolonna*, 297 Pa.Super. 284, 288 n. 2, 443 A.2d 838, 840 n. 2 (1982).

**2.** The appellant frames this issue in terms of whether the trial court erred in not sustaining his demurrer to the evidence. However, he did not rest following this adverse ruling but elected to put in a case in defense. Thus, the correctness of the ruling on demurrer is no longer an available issue. *Commonwealth v. McNeal*, 493 Pa. 395, 426 A.2d 606 (1981); *Commonwealth v. Galloway, supra; Commonwealth v. Kaster*, 300 Pa.Super. 174, 446 A.2d 286 (1982). However, we may treat this question as if it had been properly raised as a challenge to the sufficiency of the evidence. *Commonwealth v. McNeal, supra; See also: Commonwealth v. Ilgenfritz*, 466 Pa. 345, 347 n. *, 353 A.2d 387, 388 n. * (1976).

(3) elude legal process summoning him to testify or supply evidence; or

(4) absent himself from any proceeding or investigation to which he has been legally summoned.

(b) Grading.—The offense is a felony of the third degree; if the actor employs force, deception, threat or offer of pecuniary benefit. Otherwise it is a misdemeanor of the second degree.

■ The testimony of Gibbs indicates that before he ever talked to the union official regarding compensation for his injuries, he decided to drop the criminal charges against the union members since he was going to have to work side-by-side with them. Likewise, at the time the parties had reached a settlement figure of $1600.00, Gibbs informed the union official and the appellant of his intention to drop the criminal charges. Moreover, on August 21, 1980, when the appellant gave Gibbs the first $400.00 of this settlement, Gibbs had not changed his mind regarding the criminal charges. Later, Gibbs changed his mind and decided to press the criminal charges. However, Gibbs testified that he never told the union official or the appellant that he changed his mind and wished to bring these charges. Upon reviewing this portion of the record, we are compelled to inquire; why would the appellant pay off Gibbs for not bringing criminal charges when Gibbs had never indicated to the appellant or union official that he was going to bring these charges?

The Commonwealth presented evidence during trial as to the appellant's true intent under section 4907. The record is replete with segments from the taped conversations between Gibbs and the appellant which convey ambiguous meanings. The Commonwealth claims that these extracts show the appellant's intent to bribe the witness, whereas the appellant contends that he was merely advising Gibbs based upon the half-truths and misrepresentations made by the witness.

Gibbs testified that he was told by both the appellant and the union official that the settlement was for the civil and

criminal actions. Nevertheless, at no point in the taped conversations which had been admitted into evidence did the appellant state that the money was to be paid to drop the criminal charges. To the contrary, several excerpts express that the settlement concerned only the civil liability.[3]

The Commonwealth maintains that on September 22, 1980, Gibbs met with the appellant at City Hall and was advised on how to drop the criminal charges so as to receive his settlement money. However, the record fails to substantiate this claim.[4] In fact, the evidence indicates that the civil settlement money was to be paid no matter what happened to the criminal case.[5]

So, too, after receiving the initial installment of the civil liability settlement, on October 29, 1980, Gibbs signed a Release which stated in pertinent part:

3. A typical example is the following quotation:
   SYRE: "Well that's up to you. We're paying you, ah, we're, we're making a deal to settle the civil liability. Ah, you're still at the ah, ah, you're still working there, right?"

4. The Commonwealth's allegation is based upon the following conversation:
   SYRE: Now you're gonna have to talk to [the assigned prosecutor]. If you want to drop it, you're going to have to talk to him.
   *    *    *    *    *    *
   SYRE: Well he's right in that room there, [the assigned prosecutor]. Now I ... listen I ...
   GIBBS: You gon point him out to me?
   SYRE: I can't ... I can't go ... I'll point him out to you but I can't be involved in that, you know, cause I'm not supposed to be even talking to you now, that's up to you. And, and that's what I'm tell you right now. If you wanna go ahead and prosecute those guys, that's your choice. You know, if ...
   *    *    *    *    *    *
   SYRE: Okay, if you, you know, if it goes to trial or whatever that happens, and, as long as you cooperate, you know, we're square with you and that's all we care about. You don't control the results here, you don't control the D.A. ....

5. The following recorded statement by the appellant supports this conclusion:
   SYRE: ... we got two choices; one is to go to trial, that's your's, the other is we can complete this deal, maybe we can sweeten it a little, maybe we can pay you more for dropping the civil liability, uh, but anyhow, the twelve-hundred dollars is, is fixed, we're going to give you that, maybe we can give you a little more.

I further acknowledge that the execution of this release concerns the civil liabilities for which I may hold the Union, its agents, and other parties to this agreement accountable. This release does not apply to any criminal proceedings nor does it place me under any obligation whatsoever to refrain from the prosecution of any criminal actions arising from the incident of June 27, 1980.

This evidence clearly indicates that the money given to Gibbs by the appellant was not in an effort to induce Gibbs to forgo criminal prosecution.

Statements, twisted and taken out of context from a tape recording which failed in many instances to capture every word and phrase, may be construed in a variety of ways. The testimony presented by both sides is demonstrative of this analysis. However, we find the evidence does not support the verdict beyond a reasonable doubt, that the appellant attempted in any way to induce Gibbs to testify falsely, to withhold testimony, or to allude legal process. Accordingly, we reverse the conviction and order the appellant discharged.[6]

REVERSED.

ROWLEY, J., files a dissenting opinion.

ROWLEY, Judge, dissenting:

I dissent.

My review of the record convinces me that the evidence is sufficient to support the jury's verdict.

First, I note that Gibbs testified that the reason he decided to proceed with the prosecution, in spite of having agreed to drop the charges in exchange for the payment of $1,600.00, was that he was having a "hard time" at work and the union was "playing around with the money that they promised." (N.T. 140). I find no support in the record

6. The appellant raises a total of nine issues on this appeal, however, since we reverse based upon the lower court's refusal to grant a demurrer, we need not address the appellant's other contentions.

for the proposition that Penn Radio "prevailed upon" Gibbs not to drop the charges.

Secondly, the fact that Gibbs indicated he had initially planned to drop the criminal charges is, in my opinion, immaterial. Gibbs' intentions are irrelevant. Appellant is the one accused of a crime and it is *his* intent that is on trial. The evidence shows that criminal charges were pending against appellant's clients and that appellant paid Gibbs with the intention that he drop the charges.

Third, it is true that in the various tape recorded conversations which were admitted into evidence appellant did not actually say that the money was being paid to drop the criminal charges. But it should be noted that the taped conversations took place one month *after* the money was first offered and accepted. However, on the tapes that were made appellant told Gibbs that Gibbs would have to personally talk to the district attorney in order to get the charges dropped. He then told Gibbs exactly what to say. Appellant later told Gibbs that if the district attorney refused to drop the charges and he was subpoenaed, he did not have to appear, although the Sheriff would be sent after him. *If* he was found, he would have to take the stand. Appellant then advised Gibbs how to change his story and still avoid a charge of perjury.

Finally, even without the tapes the evidence is more than sufficient, in my opinion, to support the verdict. Gibbs testified that on August 21, 1981, appellant gave him $400.00 in exchange for his agreement to drop the criminal charges. (N.T. 132, 133, 2.64). He also testified that appellant told him he would be paid the rest of the money when the charges were dropped. (N.T. 135, 2.63). The majority agrees that Gibbs' "version" of the incident was that the money was paid for withdrawal of the criminal charges. The question whether Gibbs' testimony should have been believed because it was not "substantiated" by the tapes raises an issue of credibility. As such, it is, in my opinion, better left to the fact finder. The jury chose to believe Gibbs rather than appellant. Since it is within the sole

424

province of the jury to pass upon the credibility of witnesses, *Commonwealth v. Davis,* 466 Pa. 102, 351 A.2d 642 (1978), I would affirm the judgment of sentence.