471 A.2d 76

**COMMONWEALTH of Pennsylvania**

v.

**Franklin ELMORE, Appellant.**

Superior Court of Pennsylvania.

Argued June 7, 1983.

Filed Dec. 30, 1983.

Reargument Denied March 2, 1984.

Petition for Allowance of Appeal Granted Sept. 5, 1984.

542

Carmela R.M. Presogna, Assistant Public Defender, Erie, for appellant.

Frank J. Scutella, Assistant District Attorney, Erie, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH and HESTER, JJ.

SPAETH, Judge:

This appeal was taken from a judgment of sentence for rape. Appellant argues: (1) that the trial court committed reversible error in failing to grant a new trial where the jury's request for part of the trial transcript was denied *ex parte* by the tipstaff; (2) that the trial court committed reversible error in failing to grant a mistrial due to a six-day delay in the trial proceedings; (3) that the trial court's statement of reasons for its sentence was inadequate; and (4) that trial counsel was ineffective in failing to raise in the motion to modify sentence the inadequacy of the statement of reasons for the sentence. We agree with appellant's first argument and therefore reverse and remand for a new trial, without addressing appellant's remaining arguments.

The first day of trial started, before a jury, on Monday, January 12, 1981, at 2:23 p.m., and ended at 4:10 p.m. During this time the prosecution presented the testimony of five of its six witnesses, including the complainant, all of

whom were cross-examined by defense counsel. On Tuesday morning, January 13, at 9:45, the jury was advised that the trial judge had taken ill and that the case would therefore be continued until Wednesday morning. On Wednesday morning, January 14, at 9:40, the jury was advised that the trial judge was still ill, and the trial was recessed until Monday morning, January 19.

The trial resumed on January 19, 1981, at 9:20 a.m., and at 11:00 a.m. the jury retired to deliberate. During this time the prosecution presented its final witness, the defense presented its two witnesses, and the prosecution presented a rebuttal witness. At 1:43 p.m. the jury returned with a question for the court regarding the legal definition of rape. The trial judge again recited the definition for the jury. The jury then resumed its deliberations, and at 3:05 p.m. returned a verdict of guilty.

After the trial was over, defense counsel interviewed the foreman of the jury, Patricia Hagmann. She indicated that at the start of the deliberations she had asked the tipstaff if the jury could see the record of the first day's proceedings and that the tipstaff had denied this request. At the evidentiary hearing held October 1, 1981, Ms. Hagmann testified as follows:

Q. What specifically did you ask the tipstaff?

A. I asked them if we could have a copy of the records of the first day's testimony.

Q. And what was their response, if any?

A. They just said no; that it wasn't done that way.

Q. Was that response immediate or was there a time delay?

A. It was immediate.

In denying appellant's motion for a new trial, the trial court criticized defense counsel for interviewing Ms. Hagmann. The court stated:

This juror had to be subpoenaed to appear by defendant's counsel and gave the impression she was annoyed by such. Of course, we recognize the necessity for diligent

advocacy but this was not a situation where the juror felt compelled to report an injustice to either the Court or defense counsel as she saw the denial of the transcript as a mere inconvenience not affecting their deliberations. Slip op. at 3.

The court then went on to hold that even if defense counsel's action was proper, no reversible error was committed. The court stated that even if it had received the jury's request, its policy was to deny such requests. Slip op. at 4. The court also stated that granting the request would only have prejudiced appellant by highlighting the prosecution's case. *Id.*

■ Nothing in the record before this Court suggests that defense counsel's action in interviewing Ms. Hagmann was in any way improper. *See* Pa.Code of Prof.Resp. DR 7–108(D), (E). As to the merits of counsel's argument, we must proceed in two-steps, asking first, was there error; and next, if there was, was the error harmless?

We have no difficulty in concluding that the tipstaff's behavior constituted error. In fact, the Commonwealth's brief concedes as much, arguing only that the tipstaff's "error in judgment" was not of such magnitude as to require that the defendant be retried. Brief for Commonwealth at 7.

■ With respect to the magnitude of the tipstaff's error, we note that the jury's inquiry did not relate to an incidental matter, as, for example, the time at which the jurors were to eat lunch, but instead went directly to the heart of the deliberations. The inquiry should therefore have been conveyed to the trial judge, and should have been responded to by the judge, on the record, in open court, and in the presence of counsel. *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983); *Commonwealth v. Peterman,* 430 Pa. 627, 244 A.2d 723 (1968), *modified in part on other grounds, Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). (In fact, this is the procedure that the tipstaff and the court later followed when the jury request-

ed that the legal definition of rape be repeated.) Moreover, the general prohibition of *ex parte* communications between judge and jury applies with special force to *ex parte* communications between tipstaff and jury. For not only is the defendant deprived of an opportunity to have his counsel correct any error that might occur; he is also deprived of his right to have the jury's request resolved through the exercise of judicial discretion. *See Commonwealth v. Milliner*, 442 Pa. 537, 542, 276 A.2d 520, 523 (1971) (Roberts, J., dissenting) ("[R]emarks by a court crier are even less proper than remarks by a judge in the absence of counsel.")

■ In considering whether the error was harmless, we may start with our Supreme Court's recent decision in *Commonwealth v. Bradley, supra*. There the Court rejected the view that all *ex parte* communications between judge and jury require reversal. Noting that some communications are so simple as to convey only the time set for the jurors' meal, the Court held that only communications that create a reasonable likelihood of prejudice require reversal. *See also Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978) (error not harmless if reasonable possibility it may have contributed to conviction). It is the Commonwealth's burden of proving beyond a reasonable doubt that there was no such reasonable likelihood. *Commonwealth v. Story, supra*. Here, none of the Commonwealth's arguments convinces us beyond a reasonable doubt that the tipstaff's behavior did not create a reasonable likelihood of prejudice to appellant.

The Commonwealth argues that the error was harmless because under Pennsylvania Rule of Criminal Procedure 1114, the trial judge was prohibited from allowing the jury to take with it a transcript of the trial proceedings. In the Commonwealth's view, because the trial judge would have been compelled by Rule 1114 to respond to the jury's request as the tipstaff did, there was no prejudice to appellant. Although this argument has some superficial appeal, we reject it as being unrealistic. It is true that according to Ms. Hagmann's testimony, the jury requested a "copy of

the records of the first day's testimony," *i.e.*, a copy of the transcript, and that under Rule 1114, the trial judge would have had to deny this request. However, we think it unrealistic to suppose, as the Commonwealth does, that the matter would have ended there. Instead, in all probability someone would have asked, if not the jury itself then either defense counsel or the trial judge himself, whether the jury's concern could be satisfied by having parts of the transcript read to the jury. A request that parts of the transcript be read to the jury is not precluded by Rule 1114 but, rather, is a matter within a trial court's discretion, *Commonwealth v. Peterman, supra,* and we are not convinced beyond a reasonable doubt that here the judge would have denied the request. Rather, as we shall discuss, we think it at least possible, if not probable, that in the particular circumstances of this case the judge would have granted the request.

The Commonwealth argues, however, that the trial court has stated that even if it had received the jury's request, its policy was to deny such requests. This statement, however, is insufficient to support a determination that the error was harmless. We do not, of course, question the accuracy of the court's statement of its policy; as just discussed, it is in accord with Rule 1114. The issue, however, is whether the court would have exercised its discretion to respond to the jury's concern, had it known of that concern and had the concern been expressed in the presence of counsel. We do not believe that in resolving this issue we should rely on an after-the-fact statement. Given the six-day delay in the proceedings, the jury's request was both natural and appropriate. It is one thing to say *afterwards,* faced with the prospect of granting a new trial, that the request would have been denied. It is another thing to say *then,* when the request could have been granted, with no inconvenience and to the enlightenment of the jury, that it would be denied.

The Commonwealth next argues that the error was harmless because if the request had been denied, the denial

would not have been an abuse of discretion. We certainly accept the possibility that the court might have denied the jury's request, and for purposes of analysis we may assume that the denial would not have been an abuse of discretion. *See Commonwealth v. Coley,* 297 Pa.Super. 435, 444 A.2d 110 (1982) (denying request not abuse of discretion); *Commonwealth v. Jeter,* 273 Pa.Super. 83, 416 A.2d 1100 (1979) (same); *Commonwealth v. Reed,* 268 Pa.Super. 240, 407 A.2d 1335 (1979) (same). This does not convince us beyond a reasonable doubt, however, that the error was harmless. For as we have just discussed, given the six-day delay in the proceedings, it is at least possible, if not probable, that the court would have granted the jury's request. Such an order would have been well within the court's discretion. *See Commonwealth v. Peterman, supra* (granting request to read parts of transcript not abuse of discretion); *Commonwealth v. El,* 273 Pa.Super. 1, 416 A.2d 1058 (1979) (same); *Commonwealth v. Bolden,* 268 Pa.Super. 431, 408 A.2d 864 (1979) (same); *Commonwealth v. Banks,* 267 Pa.Super. 10, 405 A.2d 1277 (1979) (same).

We may also note in this regard that whether there was an abuse of discretion is immaterial. The tipstaff's behavior should not be reviewed under only an abuse of discretion standard, for a tipstaff has no power to exercise judicial discretion. Nor is there reason to ask whether the trial court abused its discretion, for it never exercised its discretion. *Cf. Wolk v. Wolk,* 318 Pa.Super. 311, 464 A.2d 1359 (1983) (decision whether to bifurcate divorce proceedings is within trial court's discretion, but where court failed to exercise its discretion, decision will be reversed and case remanded); *Commonwealth v. Coley, supra* (although trial court's denial cited court's general policy, court indicated on record that policy was appropriate in case before it; court therefore did exercise its discretion).

The Commonwealth's final argument, accepted by the trial court, is that the error was harmless because reading the first day's testimony, which represented the bulk of the Commonwealth's case, would only have prejudiced appellant

by highlighting the prosecution's case. Although this argument is the Commonwealth's most persuasive, again, it does not convince us beyond a reasonable doubt that the error was harmless. For after reviewing the record, we find that there was a reasonable likelihood of prejudice. to appellant from the failure to read the first day's testimony.

The fact that the jury requested the first day's transcript shows that the jurors' memory of the first day's testimony was incomplete. If this testimony had been unequivocally favorable to the Commonwealth, we should agree with the Commonwealth's contention. A review of the testimony discloses, however, that the testimony was not unequivocally favorable to the Commonwealth.

The complainant was the only witness who testified to the act of rape itself and to the identification of appellant as the offender. The complainant's testimony and her credibility were therefore crucial to the prosecution's case.

With respect to the act of rape itself, the complainant testified on direct examination in part as follows:

Q. Was there penetration?

A. No.

Q. He didn't penetrate you?

A. (No response.)

Q. Did he stick his penis into you?

A. Yes.

The complainant further testified on cross-examination in part as follows:

Q. Going back for a moment, if we might, to the incident in the cemetery, you indicated on direct examination first that there was no penetration and that there was sexual contact. Do you recall whether or not the man who you say attacked you had an erection at this time?

A. No, he didn't have an erection.

Q. He did not?

A. No.

Q. All right. Do you understand the difference between his penis touching you and actually penetrating your vagina?

A. I imagine it means whether he was all the way inside my body or not.

Q. Yes.

A. Well, he was inside my body.

Q. Okay. That's your testimony today?

A. Yes.

Although this testimony may be sufficient to establish the element of penetration beyond a reasonable doubt, and may indicate only complainant's unfamiliarity with the word "penetration," this testimony is not unequivocally favorable to the Commonwealth. Moreover, any prejudice in this regard was not alleviated by the court's summary of the evidence, which, as regards penetration, was as follows: "She told you ... how he penetrated her and had intercourse with her."

With respect to the identification of appellant, the complainant testified on direct examination that she had met appellant once at her home before the offense and that after the offense she had identified him one time before the preliminary hearing and later at the preliminary hearing itself. She also identified appellant at the trial. On cross-examination the complainant admitted that she could not recall when appellant was in her home and that it could have been any time within the last four years. She further admitted that the identification before the preliminary hearing was a photographic line-up and was not an in-person identification. Finally, she admitted that at the preliminary hearing appellant was the only black man in the room or even in the building. Thus, while the complainant's testimony taken as a whole may have been sufficient to convince the jury beyond a reasonable doubt that appellant was the offender, we can not be sure beyond a reasonable doubt that in reaching its decision the jury remembered and considered the weaknesses brought out on cross-examination or that its verdict would have been the same if it had.

*Cf. Commonwealth v. Coley, supra* (testimony if read would only have prejudiced defendant because it was uncontradicted and only confirmed complainant's unequivocal identification of defendant).

The judgment of sentence is vacated and the case remanded for a new trial. Jurisdiction is relinquished.

HESTER, J., filed a dissenting statement.

HESTER, Judge, dissenting:

I respectfully dissent. I would affirm on the opinion of Judge Anthony of the court below.