494 A.2d 1050

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Franklin ELMORE, Appellee.**

Supreme Court of Pennsylvania.

Argued March 4, 1985.

Decided June 26, 1985.

Michael Veshecco, Dist. Atty., Frank J. Scutella, Asst. Dist. Atty., Erie, for appellant.

Carmela R.M. Presogna, Asst. Public Defender, Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Appellee was convicted by an Erie County jury of rape. He was sentenced to a period of incarceration of from five years to ten years. Superior Court, 323 Pa.Super. 540, 471 A.2d 76 (1983) vacated the judgment of sentence and remanded the case for a new trial.

On the first day of trial, the Commonwealth presented five of its six witnesses. Then, because the presiding judge became ill, the trial was recessed for one week. When the trial resumed the Commonwealth presented its final witness, the defense presented two witnesses, and the prosecution presented a rebuttal witness. After four hours of deliberation the jury returned with a verdict of guilty.

Subsequently, appellee's trial attorney learned of a communication that had taken place between the jury and a court officer soon after the jury received its final instructions from the court. When the jury retired to deliberate, the foreperson of the jury had asked the tipstaff: "I asked them if we could have a copy of the records of the first day's testimony." (N.T., October 1, 1981, p. 4). The tipstaff told the foreperson that it was not done that way and denied the request without reporting it to the court. Short-

ly after the trial defense counsel, discussing his performance with the foreperson, ascertained the foregoing jury contact, reported it to the court, and a hearing was held to determine its effect, if any, on the deliberations of the jury and their verdict.

After the hearing the trial judge, the Honorable Fred P. Anthony, denied the motion for a new trial and gave as his reasons that had he known of the jurors' request, he would have denied it, because it was and is his policy to deny jury requests for a transcript; and in this case, to allow portions of the transcript to be re-read would have been especially prejudicial to the defendant.[1]  In addition, Pa.R.Crim.P. 1114, prohibits a jury from having a transcript during deliberations.[2]

This Court recently addressed the question of *ex parte* communication between judges and juries in *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733 (1983).  In that case, we descended from the untenable view that *any* unreported contact between the court, its officers, and the jury was *eo ipso*, grounds for a new trial.  We went to more level ground.  Mr. Justice Hutchinson speaking for a unanimous court laid the new standard: "only those *ex parte* communications between a court and jury which are likely to prejudice a party will require reversal." *Id.*, 501 Pa. at 27, 459 A.2d at 734.

We are now called upon to decide the proper standard to be applied when a court is faced with a determination of whether a particular *ex parte* communication has resulted

1.  It is important to note that it was the transcript of the first day of trial that the juror requested to see.  The only evidence presented that day was the testimony of five Commonwealth witnesses.  Among those witnesses was the complainant whose direct testimony was more than sufficient to establish beyond a reasonable doubt that she was raped by appellee.

2.  Pa.R.Crim.P. 1114 provides:
Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment.  Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.

in a "reasonable likelihood of prejudice." *Id.*, 501 Pa. at 36, 459 A.2d at 739.

Initially we must examine the concept of prejudice. Traditionally, when considering an error committed during the course of a criminal trial, we have measured prejudice by determining whether or not the error could be construed as harmless. If the error was harmless there obviously was no prejudice; if the error was not harmless to the defendant's right to a fair trial then prejudice was found to have attached. *See, for example, Commonwealth v. Canales,* 454 Pa. 422, 428, 311 A.2d 572, 575 (1973); *Commonwealth v. Fell,* 453 Pa. 531, 309 A.2d 417 (1973); *Commonwealth v. Ravenell,* 448 Pa. 162, 292 A.2d 365 (1972).

In the landmark case of *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), this Court set the standard for determining whether a particular error was harmless: "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.*, 476 Pa. at 405–406, 383 A.2d at 162 (footnote omitted). In addition, we defined the concept of harmlessness:

> an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a " 'reasonable possibility' " that an error " 'might have contributed to the conviction,' " the error is not harmless. (Citations omitted.)

*Id.*, 476 Pa. at 409, 383 A.2d at 164.

■ In the context of the present case we see no basis upon which to distinguish errors occurring before the jury begins to deliberate from errors occurring after the jury begins to deliberate. Therefore, we hold that the *Story* analysis must be employed in a *Bradley* -type case as in other instances of trial error.

The Superior Court correctly held that the *Story* approach was proper. *Commonwealth v. Elmore,* 323 Pa.Super. 540, 545, 471 A.2d 76, 78 (1983). However, we are

constrained to reverse the decision of that court, since we cannot accept the far-fetched reasoning whereby they found prejudice under the facts of this case.

On appeal the Superior Court panel, in concluding that the defendant here was somehow prejudiced, avoided the trial judge's definitive and well-reasoned explanation by characterizing his decision as an "after-the-fact"[3] determination, weakened by the prospect of granting a new trial. The panel suggested that had the trial judge known of the request, doubtless he or someone would have furnished a remedy. We disagree.

There is no reason to believe that the trial judge was any less honest in his post-trial view than he would have been at the time the request occurred. Certainly the reason he gave, that to give a transcript to the jury of a day's trial in which all the prosecution evidence was presented would revivify the testimony offered to damn the defendant, was a sound discretion whether made now or then. To evade the soundness of that discretion the Superior Court panel, almost esurient, found semantic difficulties with the complainant's description of the penetration required for rape.

To support their view the Superior Court panel recited complainant's testimony, and found ambiguity. That the complainant meant and said she was penetrated could not be clearer from her testimony. There is no question but that the jury would clearly understand that is exactly what she meant, and no nuance of reasonable interpretation seems possible to deprive her testimony of that meaning. As to complainant's identification of the defendant, complainant testified she was in defendant's company for a long walk, and that the substance of their conversation was when and where they last met. They met at her home; appellee was a friend of her brother. The plaintiff never flinched from her identification; if anything the cross-examination fortified her. To require the jury to hear again her damning evidence was hardly a benison for the appellee,

3. *Commonwealth v. Elmore*, 323 Pa.Super. 540, 546, 471 A.2d 76, 79 (1983).

and the trial judge's rationale, then or now, that to do so was a prejudice is well-founded.

The panel's distaste for "after-the-fact" determinations is not to be found by their own example in *Commonwealth v. Mason*, 324 Pa.Super. 244, 471 A.2d 555 (1983), where this same panel examined a policeman's notes and found, with assuring prescience, that a jury could not possibly have reached any conclusion as to when they were made. By the nature of such events only an "after-the-fact" determination can be made. Except for stronger reasons than those presented here the trial judge's determination should have been given more than slighting reference.

In conclusion, a review of the record convinces us that the complained-of communication was no more than an inconsequential contact between the jury and a court officer.[4] Of course, the tipstaff should have reported the jury's request to the judge who in turn would consult with both attorneys on the record; however, we are convinced beyond a reasonable doubt that the error in failing to follow that procedure was harmless and that it caused absolutely no prejudice to appellee. *See Commonwealth v. Story, supra.*

Accordingly, the order of the Superior Court is reversed and the case is remanded to Superior Court for consideration of those issues not previously addressed.

HUTCHINSON, J., concurs in the result.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I must respectfully dissent. Although there exists a well reasoned finding by the Superior Court that the jury's ex parte communication with the court crier was not harmless

---

4. The jury retired to deliberate at 11:00 A.M. At 1:43 P.M., upon their written request, they returned to court for three minutes in order for the judge to read to them the legal definition of rape. The jury reached its verdict at 3:05 P.M. There is absolutely no indication in the record of the post-trial hearing that the jury encountered any difficulty in reaching its verdict as a result of having been denied the trial transcript. (N.T., October 1, 1981, pp. 2–12).

error under our holding in *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), it is this writer's opinion that the proper test goes beyond that expressed as being only one of harmless error.

The Superior Court's reasoning and this majority's denial of that reasoning both involve conjecture and second-guessing as to the understanding and thoughts of the jury, emphasizing the need for a test which does not invade that which is solely the jury's province.

The very fact that we cannot know with any degree of certainty how ex parte interactions with the jury could have affected the outcome of the trial was the raison d'etre for our establishing a rule requiring the absolute grant of a new trial where it was found that unreported ex parte communications had occurred between the court, its officers, and the jury. In *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983), we did not disembowel that rule. We merely modified it to address those situations where the ex parte communication concerned an incidental matter not directly affecting the heart of the deliberations.

It cannot be seriously challenged under the present facts that the request of the jury foreman to the court crier was one that touched the very heart of the deliberations. It occurred because of the unusual one week recess which was caused by the trial judge's absence, a recess which resulted in a continuous motion for mistrial by the defense attorney. As the jury foreman testified, "... I guess it was shortly after I was elected foreman that they asked about it, if we could have the first day's testimony *because there was such a lapse of time."* (N.T. October 1, 1981 at p. 5). (Emphasis added).

It is also conceded by both parties to this appeal that the failure of the court crier to inform the trial judge of the jury's request constituted error. That error precluded the trial judge from ascertaining the underlying reason for the request. It further precluded trial counsel from arguing the merits or prejudice of having the notes of testimony of

the prior week read to the jury and prevented the creating of a record.

I venture to say that this much cannot be contradicted, and is sufficient under *Bradley* and under the harmless error test announced in *Story* to make out a case for granting a new trial. Further inquiry into the understanding of the jury, a domain into which we are always reticent to invade, would take us into the realm of speculation and conjecture. Any serious inquiry into the understanding of the jury was precluded when the foreman failed to inform the trial court of its request.

For the foregoing reasons under either the *Bradley* rule or the harmless error rule, on the facts and circumstances of this case, I would grant the Appellee a new trial.