348 Pa. Superior Ct. 110 (1985)
501 A.2d 671
COMMONWEALTH of Pennsylvania
v.
Richard SYRE, Appellant.
Supreme Court of Pennsylvania.
Argued March 15, 1983.
Filed November 29, 1985.
*111 F. FitzPatrick, Jr., Philadelphia, for appellant.
Eric B. Henson, Assistant District Attorney, Philadelphia, for Com., appellee.
Before ROWLEY, CIRILLO and CERCONE, JJ.
CIRILLO, Judge:
Appellant was convicted of witness tampering. The Superior Court, 322 Pa.Super. 416, 469 A.2d 1059, found the evidence insufficient to support the conviction and reversed. The Supreme Court, 507 Pa. 299, 489 A.2d 1340, found the evidence sufficient and reversed the Superior Court. The case is now before us on remand to address the remaining claims. One of appellant's contentions is that the jury which convicted him was improperly influenced. We agree and therefore reverse and remand for a new trial.
Testimony from the jurors themselves revealed several significant contacts between court officer Helen Wolf and members of the jury. Initially, we must pass upon the propriety of such juror testimony. It is true that as a general rule, a juror may not impeach his verdict after the jury has been discharged; a juror is not generally competent to testify to what went on in the jury room. Commonwealth v. Sero, 478 Pa. 440, 387 A.2d 63 (1978); see also Commonwealth v. Fuller, 336 Pa.Super. 507, 485 A.2d 1197 (1984); Commonwealth v. Boden, 337 Pa.Super. 108, 486 *112 A.2d 504 (1984). However, as our Supreme Court went on to explain in Sero, supra, this general rule does not apply to cases like the one before us: "[W]e have carved out a narrow exception to the cannon of "no impeachment," allowing post-trial testimony of extraneous influences which might have affected the jury during their deliberation." (Citations omitted). Commonwealth v. Sero, supra 478 Pa. at 448, 387 A.2d at 67.
The alternate juror, when asked about a statement made to him by one of the other jurors, responded: "She told me that a court officer, Helen Wolf, had stated to her that a person who asked for a trial by jury is guilty." Another juror related a separate incident:
I said, "Helen, you know, how much longer are we actually going to be here? You know, when we were sequestered, the Judge made a remark about three or four days." I said, "Tomorrow is going to be the fifth day and if Mr. Syre is not done already, we are going to be here for the weekend and into next week and it's just too much not being able to see my family and all."
And Helen kind of comforted me. That's when she gave me the statement when we were walking down the steps, "Look, if everybody paid attention and listened to the tapes, it shouldn't take you long to make up your mind."
This incident was related back to the alternate juror, who further testified: "Well, she told me that Helen Wolf had told her that deliberations should only take five minutes (because) he's guilty." Additional testimony revealed that the jurors discussed among themselves their uneasiness about Ms. Wolf's comments.
The Constitution of this Commonwealth specifically entitles an accused to an impartial jury. Article 1, section 9, as amended. The Sixth Amendment to the U.S. Constitution, via the enabling clause of the Forteenth Amendment, confers the same right. Commonwealth v. Cornitcher, 447 Pa. 539, 291 A.2d 521 (1972). Indeed, no right is more fundamental to the American justice system. Philadelphia *113 Newspapers, Inc. v. Jerome, 478 Pa. 484, 504, 387 A.2d 425, 435-36 (1978), cert. denied, 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979) (citing U.S. Const. Amend. VI; Pa. Const. art. I, § 9); Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). Thus, when an accused is denied a fair trial because of jury partiality, even the most minimal standards of due process have been violated. See Cornitcher, supra; Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). See also Witherspoon v. Illinois, 391 U.S. 510, 518, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968); Turner v. Louisiana, 379 U.S. 466, 470-72, 85 S.Ct. 546, 548-49, 13 L.Ed.2d 424 (1965); cf. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
Before us is a situation wherein extra-judicial information reached the jurors after they were sworn. Unlike those instances in which damaging material reaches the jury before trial, that which comes to the jury's attention during trial is not subject to the voir dire screening process. Unless it is immediately brought to the court's attention, such information is not subject to cross-examination or a curative instruction, and the declarant cannot be confronted. As a result, a stringent standard of review is essential. It is the only way to avoid a violation of due process rights. Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); United States v. Williams, 568 F.2d 464 (5th Cir. 1978).
As our Supreme Court recently re-affirmed in Commonwealth v. Elmore, 508 Pa. 81, 494 A.2d 1050 (1985), the applicable standard lies midway between a requirement that any ex parte contact requires reversal and a requirement *114 that actual bias must be shown. In other words, we look only for a "reasonable likelihood of prejudice." Commonwealth v. Bradley, 501 Pa. 25, 459 A.2d 733 (1983). Of course, if we do find a reasonable likelihood that the error contributed to the conviction, such error cannot be deemed harmless. Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155 (1978). It is incumbent upon the Commonwealth to prove beyond a reasonable doubt that the error was harmless. Commonwealth v. Elmore, supra.
When the subject matter of the ex parte contact with the jury is somehow related to the case before them, such "reasonable likelihood" of prejudice is automatically found. As the Supreme Court held in Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954):
any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. (Emphasis added).
See also United States v. Myers, 626 F.2d 365 (4th Cir. 1980); United States v. Forrest, 620 F.2d 446 (5th Cir. 1980); Sullivan v. Fogg, 613 F.2d 465 (2d Cir. 1980); United States v. Fleming, 594 F.2d 598 (7th Cir.), cert. denied, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); United States v. Moten, 582 F.2d 654 (2d Cir. 1978); Government of the Virgin Islands v. Gereau, 523 F.2d 140 (3d Cir. 1975), cert. denied, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); United States v. Brasco, 516 F.2d 816 (2d Cir.) (per curiam), cert. denied, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1975); United States v. Ferguson, 486 F.2d 968 (6th Cir. 1973); Ellie v. Oklahoma, 430 F.2d 1352 (10th Cir. 1970), cert. denied, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971).
We hold that in the case sub judice, this presumption of prejudice simply cannot be overcome by the Commonwealth. The evidence, which overwhelmingly demonstrates that a *115 representative of the court discussed the accused's guilt with those who would ultimately decide his fate, went beyond a likelihood of prejudice to an outright showing of actual prejudice. In a factually similar case (bailiff talking with jurors), the United States Supreme Court in Parker v. Gladden, supra, concluded:
The official character of the bailiff  as an officer of the court as well as the state  beyond question carries great weight with a jury. We believe that the unauthorized conduct of the bailiff "involves such a probability that prejudice will result that it is deemed inherently lacking in due process," Estes v. Texas, 381 U.S. 532, 542-543, 14 L.Ed.2d 543, 549, 550, 85 S.Ct. 1628 [1636] (1965).
Virtually every jurisdiction has adopted Parker's view that such outside interference is in violation of due process rights. See and compare Willie v. Maggio, 737 F.2d 1372 (5th Cir. 1984); United States v. Dean, 667 F.2d 729 (8th Cir. 1982); Fortenberry v. Maggio, 664 F.2d 1288, 1292 (5th Cir. 1982); United States v. Bruscino, 662 F.2d 450, 458 (7th Cir. 1981); Gibson v. Clanon, 633 F.2d 851 (9th Cir. 1980); United States v. Moten, 582 F.2d 654, 661 (2d Cir. 1978); United States v. Doe, 513 F.2d 709-711 (1st Cir. 1975); Jones v. Norvell, 472 F.2d 1185 (6th Cir. 1973); Gafford v. Warden, U.S. Penitentiary, Leavenworth, Kansas, 434 F.2d 318 (10th Cir. 1970); Alford v. State of North Carolina, 405 F.2d 340, 343 n. 7 (4th Cir. 1968); Lacy v. Gabriel, 567 F.Supp. 467 (1983) cert. denied, ___ U.S. ___, 105 S.Ct. 195, 83 L.Ed.2d 128 affirmed 732 F.2d 7; Tobias v. Smith, 468 F.Supp. 1287 (W.D. New York 1979); United States ex rel. Spero v. Wenzel, 397 F.Supp. 597 (E.D.New York 1975); United States v. Dioguardi, 361 F.Supp. 954 (D.C.N.Y. 1973); United States v. Driscoll, 276 F.Supp. 333 (S.D.New York 1967); Brummitt v. State, 44 Ala.App. 78, 203 So.2d 133 (1967); Wamser v. State, 652 P.2d 98 (Alaska 1982); People v. Hogan, 31 Cal.3d 815, 183 Cal.Rptr. 817, 647 P.2d 93 (1982); State v. Brigandi, 186 Conn. 521, 524, 442 A.2d 927, 937-938 (1982); Oliver v. State, 25 Md.App. 647, 650, 334 A.2d 572, 574 (1975); Commonwealth v. *116 Hunt, 392 Mass. 28, 465 N.E.2d 1195 (1984); State v. Holly, 350 N.W.2d 387 (Minn.App. 1984); Crowe v. State, 84 Nev. 358, 441 P.2d 90, 93 (1968); State v. Mann, 112 N.H. 412, 297 A.2d 664 (1972).
When such interference is found, the courts almost uniformly demand that the verdict be set aside. Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); United States ex rel. Tobe v. Bensinger, 492 F.2d 232 (7th Cir. 1974); United States v. Brumbaugh, 471 F.2d 1128 (6th Cir. 1973); United States v. Gersh, 328 F.2d 460 (2d Cir. 1964); Wheaton v. United States, 133 F.2d 522 (8th Cir. 1943). See also Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965); Snyder v. Lehigh Valley R.R. Co., 245 F.2d 112 (3d Cir. 1957); United States v. Pittman, 449 F.2d 1284 (9th Cir. 1971).
Only last year we re-asserted our duty to uphold the sanctity of the jury trial:
[It] is imperative that we promote public confidence in our judicial system by vigilantly protecting the integrity of our jury system. "Trial by jury presupposes that the jury works in a controlled environment, untouched by any influence other than that properly permitted by the trial judge." Hobson v. Wilson, [737 F.2d 1, D.C.Cir. 1984]. To safeguard zealously this controlled environment, we must see to it that "each juror enters a case impartial, and throughout trial remains uncontaminated by outside pressures." Id.; Code of Professional Responsibility EC 7-29. We must take every "precaution against evil communication which may corrupt [the jury]." Mix v. North America Co., [209 Pa. 636, 645, 59 A. 272, 274-75 (1904)].
Colosimo v. Pennsylvania Electric Co., 337 Pa.Super. 363, 369, 486 A.2d 1378, 1381 (1984). Given the court officer's *117 flagrant violation of these principles in the case before us, the verdict cannot stand.
Reversed and remanded. Jurisdiction is relinquished.