## Mix v. North American Company, Appellant.

*Appeals—Practice, Supreme Court—Assignments of error.*

An assignment of error setting forth that the court erred in refusing a new trial for four specific reasons stated, does not violate rule 29, which provides that each error relied on must be specified particularly and by itself.

An assignment of error in the following form is not improper. " The learned court erred in refusing to grant defendant a new trial, notwithstanding the evidence of the corrupt solicitations of certain jurors in behalf of the plaintiff, the misconduct of the jury, and the various irregularities in connection therewith both during the course of the trial and after the jury had retired to deliberate upon their verdict, tending prejudicially to affect their deliberations and judgment, which things were made known to the court either while the trial was in progress or by depositions taken subsequently thereto ; and upon the ground of after-discovered evidence."

*New trial—Appeals—Discretion of court—Improprieties connected with the jury—Depositions.*

The refusal to grant a new trial for alleged improprieties relating to or affecting the jury, rests, as a rule, in the sound discretion of the lower

court, and will not be reviewed by the appellate court ; but when there is an allegation of the court's abuse of its discretionary power in passing upon an application for a new trial, it is the duty of the appellate court to inquire into the facts, and if, after due consideration of them abused discretion clearly appears, the improper action below must be reversed and the wrong done corrected. In making such an inquiry the appellate court will consider the depositions taken in support of the motion for a new trial.

On a motion for a new trial in a libel suit against a newspaper, from the depositions taken in support of the motion, it appeared that one of the jurors was called up over the telephone by a man whose name he refused to disclose, and who subsequently called upon the juror and urged him to stand out for the plaintiff. The juror resented the attempt to influence him, communicated the matter to his counsel, who in turn communicated it to the trial judge, but the latter did nothing and continued the trial. Another juror was called upon at his own house and asked to give the plaintiff the benefit of the doubt. This was also resented by the juror, but defendant's counsel had no knowledge of it before the jury were discharged. During the trial a third juror discussed the case in a cigar store, and denounced the newspaper as " a damned liar." It also appeared that certain of the jurors started a game of poker after they had retired to deliberate, and that one of them after a period of play sent out for additional money. It also appeared that the officers having the jury in charge and while they were out deliberating, permitted the jurors to separate, talk over the telephone, communicate with their families, and in charge of the officers visit the public offices. *Held,* that it was an abuse of the discretion of the court, under the circumstances, to refuse a new trial.

It has been said that the greatest object of civil government is to get twelve honest men in the jury box. If this is true, after they get there they must be kept there, hedged around not only with their own integrity, but with every precaution against evil communication which may corrupt them ; and when they go to their room to deliberate upon an issue in which is involved the life, liberty or property of their fellowman, their conduct in the discharge of such duty must comport with it, else confidence in the system which is the best achievement of civilization will be lost. Per BROWN, J.

Argued Feb. 2, 1902. Re-argued March 22, 1904. Appeal, No. 210, Jan. T., 1903, by defendants, from judgment of C. P. No. 5, Phila. Co., March T., 1901, No. 764, on verdict for plaintiff, in case of Lorraine P. Mix v. North American Company, Thomas B. Wanamaker and E. ' A. Van Valkenburg. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Trespass to recover damages for libel. Before MARTIN, P. J.

At the trial it appeared that the action was based on certain articles published in the North American in October, 1900,

and February, 1901, which publications charged plaintiff with the murder of her former husband, Dr. George W. Bull, by poison.

Verdict and judgment for plaintiff for $25,000. ˙ Defendant appealed.

*Error assigned* among others was (223).

The learned court erred in refusing to grant defendants a new trial, notwithstanding the evidence of the corrupt solicitations of certain of the jurors in behalf of the plaintiff, the misconduct of the jury, and the various irregularities in connection therewith, both during the course of the trial and after the jury had retired to deliberate upon their verdict, tending prejudicially to affect their deliberations and judgment, which things were made known to the court either while the trial was in progress or by depositions taken subsequently thereto ; and upon the ground of after-discovered evidence.

The evidence taken by depositions in support of a motion for a new trial is summarized in the opinion of the Supreme Court.

*James Gay Gordon* and *George S. Graham,* for appellants.— Evidence of jurors touching the misconduct of themselves and their fellows was admissible : Mattox v. United States, 146 U. S. 140 (13 Sup. Ct. Repr. 50) ; Ritchie v. Holbrooke, 7 S. & R. 458 ; Stull v. Stull, 197 Pa. 243.

The improper influence exerted upon • jurors is ground for a new trial : Owen v. Schmidt, 14 Phila. 183.

It is improper for any person to talk with jurors as to a case which they are empaneled to try, and where a party, or one in his behalf, does so in such a manner as to justify the assumption that he wishes to influence the jurors, a verdict in his favor will be set aside and a new trial granted : Chahoon v. Hackley, 5 Kulp, 397 ; Blaine v. Chambers, 1 S. & R. 169 ; Sohn v. Hershey, 5 Lanc. Law Rev. 301 ; Com. v. Martin, 16 Pa. C. C. Rep. 597 ; Johnson v. Ry. Co., 8 Del. Co. Rep. 346 ; Francis v. Phila., etc., Ry. Co., 13 Mont. Co. Law Rep. 176 ; Keegan v. McCandless, 7 Phila. 248 ; Redmond v. Royal Ins. Co., 7 Phila. 167 ; Boreland v. St. Clair, 4 Pa. C. C. Rep. 541 ; Elkins v. Gaff, 2 W. N. C. 586 ; Montgomery v. Scott Twp., 26

Pitts. Legal Jour. 193 ; Harvester Co. v. Hodge, 6 Pa. Dist. Rep. 378; Reins v. People, 30 Ill. 256 ; Rickard v. State, 74 Ind. 275 ; Com. v. Heden, 162 Mass. 521 (39 N. E. Repr. 181) ; Ritchie v. Holbrooke, 7 S. & R. 458 ; Owen v. Schmidt, 14 Phila. 183 ; Com. v. Martin, 16 Pa. C. C. Rep. 140.

It certainly cannot be that gambling can take place in the juryroom, and jurors be subjected to the influence of this vice, and to the probable power which might thereby be acquired by a successful participation in the game over the loser, and that such practice will be passed over without notice. It certainly cannot be that a juror losing money at a game, and requiring more for further gambling, can be permitted to send out and receive money from the outside. The very suggestion of such a matter carries with it its own decision and its own argument. So, too, as to communications over the telephone ; they admit of possibilities of improper influence so subtle and so palpable as not to require discussion.

*Henry J. Scott*, with him *James Fitzpatrick* and *Anthony A. Hirst*, for appellee.—The court cannot consider the subject-matter of assignment No. 223, because it violates rule 29 of this court: Irvin v. Kutruff, 152 Pa. 609 ; Saxton's Estate, 195 Pa. 459.

The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and the result cannot be made the subject of review by writ of error : Henderson v. Moore, 9 U. S. 11 ; Newcomb v. Wood, 97 U. S. 581.

A new trial will not be granted for irregular conduct by a juror, which has done no harm : Com. v. Cressinger, 193 Pa. 326 ; Heiss v. Lancaster, 18 Lanc. Law Rev. 289 ; Leitz v. Hohman, 18 Lanc. Law Rev. 217 ; Com. v. Zuern, 24 Pa. C. C. Rep. 264; Megargel v. Waltz, 21 Pa. C. C. Rep. 633 ; Mc-Causland v. McCausland, 1 Yeates, 372 ; Shomo v. Zeigler, 10 Phila. 611 ; Hawley v. Acker, 2 Woodw. 237 ; Com. v. Jongrass, 181 Pa. 172 ; Owen v. Schmidt, 14 Phila. 183 ; Moss v. Com., 107 Pa. 267 ; Kramer v. Kister, 187 Pa. 227 ; Com. v. Hurd, 177 Pa. 481 ; Com. v. Painton, 5 York, 140 ; Scott v. Reyer, 5 Leg. Gaz. 73 ; West Chicago St. R. R. Co. v. Lundahl, 183 Ill. 284 (55 N. E. Repr. 667) ; State v. Tilghman, 33

N. C. 513; Kennedy v. Com., 2 Va. Cas. 510; Masterson v. State, 144 Ind. 240 (43 N. E. Repr. 138); Sanitary Dist. of Chicago v. Cullerton, 147 Ill. 385 (35 N. E. Repr. 723); Armleder v. Lieberman, 33 Ohio St. 77; Hamburger v. Rinkel, 164 Mo. 389 (64 S. W. Repr. 104); Com. v. Cleary, 148 Pa. 26; Com. v. Salyards, 158 Pa. 501; Com. v. Morgan, 3 Pa. C. C. Rep. 151; Com. v. Clemmer, 2 Pa. C. C. Rep. 629; Creek v. State, 24 Ind. 151; State v. Wart, 51 Iowa, 587 (2 N. W. Repr. 405); Dozenback v. Raymer, 13 Colo. 451 (22 Pac. Repr. 787); Alexander v. Dunn, 5 Ind. 122; Stutsman v. Barringer, 16 Ind. 363; New Albany v. McCulloch, 127 Ind. 500 (26 N. E. Repr. 1074); Perkins v. Ermel, 2 Kans. 325; Morrow v. Saline Co., 21 Kans. 484; Smith v. Thompson, 1 Cowen, 221; Ex parte Hill, 3 Cowen, 355; Anthony v. Smith, 17 N. Y. Super. Ct. 503; Downer v. Baxter, 30 Vt. 467; State v. Cottrill, 52 W. Va. 363 (43 S. E. Repr. 244); Marzen v. People, 190 Ill. 81 (60 N. E. Repr. 102); Gott v. People, 187 Ill. 249 (58 N. E. Repr. 293); Moore v. People, 26 Colo. 213 (57 Pac. Repr. 857).

The depositions are not before this court: France v. Ruddiman, 126 Pa. 257; Com. v. Ramsay, 166 Pa. 642.

OPINION BY MR. JUSTICE BROWN, November 4, 1904:

At the first session of the present term an opinion was filed in this case in which we held that we could consider only the last assignment of error, because all of the rest related to matters not brought up to us for review. There was no certificate, as required by rule 22, signed in the following form: " The foregoing notes of testimony, with the exceptions taken by counsel during the trial to the rejection or admission thereof, and the charge with the exceptions thereto, have been examined by me, and are hereby approved and ordered to be filed. ———— judge; " and, the said rule having been invoked by counsel for the appellee, there seemed to be no course open to us except to enforce it, for it did not appear that a single exception had been taken under the established form of the common law. Since that opinion was filed counsel for appellants have satisfied us that bills of exception, bringing up the matters to which the dismissed assignments of error related, had been allowed and filed, but were so attached to the record that, though looked for, they naturally escaped our notice, as

is frankly admitted by counsel for appellants.  Our view, on discovering that exceptions had been properly taken, was that the assignments of error based upon them should be taken up and disposed of; but, as counsel for appellants say they do not now press these assignments, and are willing to allow the re-versal of the judgment to rest upon the disposition made of the last assignment, we will not pass upon any other.

We are asked to dismiss the last assignment as being in violation of rule 29, which provides: " Each error relied on must be specified particularly and by itself.  If any specification embrace more than one point, or refer to more than one bill of exceptions, or raise more than one distinct question, it shall be considered a waiver of all the errors so alleged."  The contention of the appellee is that the last assignment contains four distinct specifications of error, but in this we do not concur.  While four specific reasons are given why the new trial should have been awarded, the single error alleged by the assignment is the denial of it.  The one distinct question raised is the proper exercise of the court's discretion in passing upon the application for the new trial when asked to award it for the four reasons set forth in the assignment: First, on the ground of the corrupt solicitation of the jurors; second, misconduct of the jurors; third, various irregularities and improprieties on the part of the jury after they had retired to deliberate upon their verdict; fourth, for after-discovered evidence.  There might have been four specific assignments based upon the four reasons stated, but the four assignments together would have alleged but a single error, brought to our attention by this last assignment, which cannot, therefore, be regarded as violative of the rule referred to.

The refusal to grant a new trial for such reasons as are set forth in the assignment before us rests, as a rule, in the sound discretion of the lower court, and will not be reviewed here; but, when there is an allegation of the court's abuse of its discretionary power in passing upon an application for a new trial, we have repeatedly held it to be our duty to inquire into the facts, and if, after due consideration of them, abused discretion clearly appears, the improper action below must be reversed and the wrong done corrected: Smith v. Times Publishing Co., 178 Pa. 481.

In this case the alleged abuse of discretion appears from the depositions taken in support of the motion for a new trial, and the learned counsel for the appellee insists we cannot consider them, as they form no part of the record before us. As a rule, this, too, is true of depositions taken in support of a motion for a new trial; but, if it is our duty to review such abuse of discretion as is here alleged, we can do so in no other way than by reviewing that upon which the court below acted. To decline to look at the depositions would be to decline to consider the question which the appellants have the right to raise and to have decided. Unless we examine the depositions, we can neither review the improper action complained of nor correct the error of the court below, alleged to have resulted from an abuse of its discretion. On the undisputed facts, as gathered from the depositions, the single narrow question for our consideration is, should the verdict have been set aside for the first three reasons stated in the assignment of error? No error was committed in refusing to grant it on the ground of after-discovered evidence.

After the cause had been on trial for a day or two one of the jurors was called up over the telephone by a man whose name he refused to disclose, and the following, according to the uncontradicted testimony of the juror, took place between them: " Q. What was said to you? A. Well, first he called me up over the 'phone. He says : ' You are on the Mix versus The North American case.' I told him that I was. He said: ' I want you to do me a favor.' He says : ' I want you to stand out for the plaintiff,' he says. And I asked him if he knew what he was doing over the 'phone. ' Why, my God!' I says, 'you must not say anything of that kind.' " The man then left the telephone and in ten or fifteen minutes appeared at the juror's place of business, where he said: " Do you know who is back of this case ; if you knew who was back of this case you would be surprised." The juror resented with reproach this attempt to influence him and drove the man away after he had pleaded that he was drunk. Worried over what had occurred, the juror the next day communicated it to his counsel, a most respected member of the Philadelphia bar, who called upon the trial judge and repeated what had been told to him, declining, however, to give the name of the man who had ap-

proached the juror.  The trial judge said he would take the matter into consideration, and later in the day informed the juror's counsel that he had concluded it was not necessary for him to do anything in the matter.  This attempt to approach the juror and what followed between his counsel and the court were unknown to the attorneys on either side of the case until the verdict had been rendered.  Another juror, while the trial was in progress, was called upon at his own home by a person whose name he did not know, but who professed to know him, and asked whether he could be seen privately.  The private interview was refused, and the juror having taken his visitor upstairs and called his wife, the stranger began to talk about the case.  He asked that the plaintiff be given the benefit of any doubt, adding that Wanamaker and the North American were always talking about people.  This was also resented by the juror, but counsel for the appellants had no knowledge of it before the jury were discharged.  During the trial a third juror discussed the case in a cigar store, and, in the discussion, denounced the North American as " a damned bladder " and " a damned liar."  This, too, seems to have been unknown to the defendants until after the trial was over.

After having been sent out to the jury room to deliberate on their verdict, certain of the jurors started a game of poker, and when one of them, in a short time, had a not unusual experience, he was allowed by the obliging, but recreant, officers having them in charge to send out for and receive another stake, and the game then went on.  While they were out deliberating, four of the jurors separated from the rest in charge of an officer and spoke over a telephone in another room to outside parties.  At another time one of them, apart from his fellows, and in another room, was permitted to communicate with his family over the telephone.  At times, when they were supposed to be discussing the case and what their finding should be, they were allowed to separate in charge of officers whose duty it was to keep them together in the place legally provided for them.  So separated, they visited the public offices, went to the electrical bureau in the city hall and had its workings explained to them.  At this time they were supposed to be together, deliberating upon their verdict, except when taking needed food or rest, in the custody of the officers of the court,

each of whom had sworn, "I will well and truly keep all juries placed in my custody in the place legally provided for them; I will not permit any person to speak to them, nor speak to them myself in relation to any trial in which they may be or have been empaneled, except to ask them if they have agreed upon their verdict or to return to the court room, or concerning their health, comfort and necessities while in my custody."

In the opinion discharging the rule for a new trial no notice is taken by the court of the attempts to approach and improperly influence two of the jurors, nor of the gross misconduct of the third, who, in discussing the case in a cigar store while the trial was in progress, spoke in most unseemly terms of the North American, one of the defendants, indicating his utter unfitness to render an honest and impartial verdict.

When the attention of the trial judge was called to the improper communication with the first juror, the trial should have been halted and a searching investigation instituted by the court, of its own motion, sparing no one, to ascertain not only who had attempted to invade the jury box, but at whose instance the attempt had been made. After such investigation the trial could have been renewed or a juror withdrawn and the case continued, as the court, in the proper exercise of its discretion, might have deemed the proper course. In ignorance of what had been attempted against them by some one apparently interested in the plaintiff, the trial against the defendants went on before a jury which they had a right to assume had not been tampered with, and when they learned only after the verdict had been returned that the juror had been improperly approached, their complaint against the integrity of the verdict is not without cause and must receive due consideration, in connection with the other and exceptional irregularities and improprieties brought to our notice by undisputed testimony and urged as reasons why the verdict should be set aside. The same is true of what was attempted with the second juror. As to the third, who was present when the depositions were taken, and failed to deny that, during the trial, he had made the improper remarks attributed to him, it can fairly be said by the defendants that, as to him, the verdict was not a true finding.

As to the separation of the jurors and their misconduct during their deliberation after having retired to their room, the

court below was of opinion that no substantial irregularity in arriving at the verdict had been disclosed. If by this it is meant that the separation and misconduct did not affect the verdict, the learned trial judge may be correct, but it must be remembered that separation of the jury is not allowed in any case after they have retired to deliberate upon their verdict until they have found it, and that in every case, when the duties of the trial judge have ended in his instructions to them, he commits them into the custody of an officer of his own court, who has taken the oath quoted. While it is true that the separation of the jury in a civil case, after the cause has been committed to them and before they have agreed upon a verdict, is not, as a mere matter of law, ground for a new trial, such separation is a deviation from duty and order. Here the deviation was gross; officers were utterly regardless of their oath in allowing the jury to separate, and the jurors themselves were heedless of their duty in doing so; and taking their separation into consideration in connection with their communication with outside parties after they had retired to their room and with the gambling that was continued only after money had been sent for and received from the outside, their misconduct cannot escape judicial condemnation.

It has been said that the greatest object of civil government is to get twelve honest men in the jury box. If this is true, after they get there they must be kept there, hedged around not only with their own integrity, but with every precaution against evil communication which may corrupt them; and when they go to their room to deliberate upon an issue in which is involved the life, liberty or property of their fellow-man, their conduct in the discharge of such solemn duty must comport with it, else confidence in the system which is the best achievement of civilization will be lost.

We are not prepared to say that, in itself, any one of the several reasons assigned by the appellants for a new trial, and to which we have called attention ought to have moved the court below to grant it; but all of them taken together manifestly should have done so. We need say no more than that the verdict is not a safe one for judgment on it and must, therefore, be set aside.

Judgment reversed and a venire facias de novo awarded.