637 A.2d 246

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**James MOSLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 5, 1993.

Decided Nov. 12, 1993.

550

Joseph P. Green, Jr., West Chester, for J. Mosley.

Stuart Suss, West Chester and Nicholas J. Casenta, Jr., Asst. Dist. Atty., for the Com.

Robert J. Donatoni, West Chester, for amicus, Pa. A.C.D.L.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION*

NIX, Chief Justice.

This is an appeal from an Order of the Superior Court affirming the judgment of sentence imposed on Appellant James Mosley by the Court of Common Pleas. The issue presented for review is whether the Superior Court erred in refusing to set aside a verdict in a criminal case in which a juror and a police witness engaged in an *ex parte* conversation during the course of the trial. We hold that the trial court erred when it failed to question the juror about possible prejudice arising from the *ex parte* contact and therefore reverse.

On September 29, 1989, Appellant was convicted by a jury of terroristic threats,[1] simple assault,[2] recklessly endangering another person,[3] and resisting arrest.[4] The jury acquitted Appellant of aggravated assault.[5] Additionally, the trial court found him guilty of the summary offenses of criminal mischief[6] and disorderly conduct.[7] Following trial, Appellant filed a Motion for Post–Trial Relief requesting a new trial and/or arrest of judgment. Appellant's Motion was denied and he received an aggregate sentence of two years probation and was ordered to pay $1,431.03 in restitution and perform one hundred hours of community service.

Appellant's conviction was based upon the following facts:

On January 31, 1989, Appellant arrived at the East Fallowfield police station around midnight, where Officer Joseph Wilson was on duty. Appellant, appearing somewhat disconcerted, told Officer Wilson that he had been involved in an argument with a woman named Sharon Smith, and wanted to tell his side of the story before he was arrested.

1.  18 Pa.C.S.A. § 2706.
2.  18 Pa.C.S.A. § 2701(a)(1).
3.  18 Pa.C.S.A. § 2705.
4.  18 Pa.C.S.A. § 5104.
5.  18 Pa.C.S.A. § 2702.
6.  18 Pa.C.S.A. § 3304(a)(2).
7.  18 Pa.C.S.A. § 5503(a)(1).

During this exchange, Officer Wilson was informed by the police dispatcher that Sharon Smith had called in a complaint. Officer Wilson then brought Appellant home in his police car in an attempt to mediate the dispute between the two parties.

After arriving at Appellant's home, Officer Wilson met with an overwrought Sharon Smith. Several minutes later, Officer Wilson informed Appellant that he was under arrest for assault and rape.[8] Appellant was placed in the police car and Officer Wilson made a radio call requesting assistance from South Coatesville, a neighboring municipality. Shortly thereafter, Sergeant Lewis Wilson, Officer Joseph Wilson's brother, arrived at the scene.

While the two officers interviewed Sharon Smith, they heard some loud banging outside. Officer Joseph Wilson went outside to investigate and saw Appellant banging and kicking the inside of the police car. He then went over to the car and shouted at Appellant to stop. After Appellant continued to kick, Officer Wilson opened the car door in order to handcuff him. As the car door opened, Appellant lunged at Wilson and attempted to grab his gun while threatening to kill him. As the two men struggled, Sergeant Wilson ran outside and pulled Appellant off his brother. After several minutes of wrestling, the officers handcuffed Appellant, placed him back in the police car, and took him to the hospital.

At trial, Appellant gave a vastly different version of the events which occurred on the night in question. According to Appellant's testimony, he was detained in the locked police car for more than thirty minutes while the two officers spoke with Sharon Smith. Appellant began to bang on the interior of the car in order to get the officers' attention and gain his release. Appellant testified that Officer Joseph Wilson came outside, opened the car door and began to assault him. Officer Wilson then pulled Appellant from the car and continued the assault. When Sergeant Lewis Wilson heard the struggle, he ran outside to assist his brother. The two officers then beat Appellant into submission.

8. No charges were ever brought against Appellant in connection with the incident involving Sharon Smith.

The case was tried before a jury in order to resolve the disputed credibility questions. During a recess in the trial, Sergeant Lewis Wilson was observed having a conversation with one of the jurors outside the courtroom. Appellant requested that the juror be excused for cause and replaced by the first alternate.

In order to decide the matter, the trial judge conducted a *voir dire* hearing to determine the nature and extent of the conversation between Sergeant Wilson and the juror. The only witness at the hearing was Sergeant Wilson, who was questioned by both defense counsel and the Assistant District Attorney.

After the hearing, the trial judge made the following findings of fact and conclusions of law:

[Sergeant Lewis Wilson] and the juror were seated opposite each other in the lobby outside the courtroom in the presence of other jurors. Their conversation, which was loud enough for all to hear, lasted less than a minute and did not relate in any way to the case, Officer Wilson's official duties, the court system, crime in general or jury duty. The juror mentioned that he lived in West Caln, to which Officer Wilson replied that West Caln had a "pretty good police department." The juror then stated that he personally knew the department's Chief Bicking. They also briefly discussed the growing population in the area and Officer Wilson stated that he lived in Coatesville and calls it "Little Philadelphia."

... In the instant matter the communication did not relate in any way to the matter before the jury.

... While we certainly do not condone witness and juror interaction, we find, based on the evidence presented, that this non-secretive communication which was unrelated to the case, was at most, harmless error.

*Commonwealth v. Mosley*, No. 490–89, slip op. at 4–5 (C.P. Chester County April 4, 1991).

On appeal to the Superior Court, Appellant argued that the trial court erred in refusing to remove a juror with whom a

police witness had conversed during trial. The Superior Court held that "the interchange as a whole was a public one, made in the presence of other jurors and lasted less than a minute, did not relate to the case, the court system, crime in general, the witness or jury duty. It was an innocuous conversation." *Commonwealth v. Mosley,* 421 Pa.Super 634, 612 A.2d 534 (Super.Ct. March 31, 1992). As a result, the Superior Court found that the trial court did not err in refusing to remove the juror. We disagree.

"The touchstone of a fair trial is the mandate, 'that a defendant have a panel of impartial, indifferent jurors' available to try his cause." *Commonwealth v. Richardson,* 476 Pa. 571, 578, 383 A.2d 510, 514, *cert. denied, Richardson v. Pennsylvania,* 436 U.S. 910, 98 S.Ct. 2248, 56 L.Ed.2d 410 (1978) (citing *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)).

In *Mix v. North American Co.,* 209 Pa. 636, 59 A. 272 (1904), we stated:

> It has been said that the greatest object of civil government is to get twelve honest men in the jury box. If this is true, after they get there they must be kept there, hedged around not only with their own integrity, but with every precaution against evil communication which may corrupt them; and when they go to their room to deliberate upon an issue in which is involved the life, liberty or property of their fellowman, their conduct in the discharge of such solemn duty must comport with it, else confidence in the system which is the best achievement of civilization will be lost.

*Id.* at 645, 59 A. at 274–75. Accordingly, any contact between jurors and other parties, court officers, lawyers, and judges is viewed with disfavor. *Colosimo v. Pennsylvania Elec. Co.,* 513 Pa. 155, 161, 518 A.2d 1206, 1209 (1986).

The appropriate standard for determining whether *ex parte* contact between a juror and an officer of the court justifies the grant of a new trial was set forth in *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983). Under *Bradley,*

there must be a showing that the contact between a member of the jury and an officer of the court resulted in "a reasonable likelihood of prejudice" to the defendant. *Id.* at 36, 459 A.2d at 739.

Appellant and *Amicus Curiae* urge the adoption of a *per se* rule which would require the disqualification of any juror that engages in contact or converses with a trial witness. We have previously refused to adopt a *per se* rule that would allow a new trial in situations where contact between a juror and an attorney or a juror and a party took place. *Colosimo v. Pennsylvania Elec. Co.*, 513 Pa. 155, 164, 518 A.2d 1206, 1210 (1986). Furthermore, we eliminated a *per se* rule that required the grant of a new trial any time *ex parte* contact occurred between a juror and a judge, regardless of how innocuous the contact. *Commonwealth v. Bradley*, 501 Pa. at 36, 45, 459 A.2d at 739. In abandoning that rule, we noted: "[i]t would be jurisprudentially unsound to endorse a rule of law proscribing every circumstance, whether deliberately contrived or not, which provided an opportunity for an untoward influence to be exercised, without the necessity of establishing that there was, in fact, prejudice resulting from the event." *Id.* at 37, 459 A.2d at 739 (quoting *Commonwealth v. Richardson*, 476 Pa. 571, 579, 383 A.2d 510, 514 (1978)).

Accordingly, we decline to adopt a *per se* rule which would require the disqualification of a juror anytime there is *ex parte* contact between that juror and a witness. Rather, we rely upon our previous decisions concerning *ex parte* contact with jurors to resolve the issue at hand.

The courts look with suspicion upon any communications between parties to a suit or their counsel and the jury impaneled to try it; and if such communication is had and it appears that a conversation was had about the suit, or the communication is not explained satisfactorily, it will, in itself, be ground for a new trial. If, when explained, however, it can be seen in the communication nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which

was reached, no ground exists to set the verdict aside for the reasons that said comment could not have been prejudicial.

*Colosimo v. Pennsylvania Elec. Co.*, 513 Pa. at 165, 518 A.2d at 1211 (citing *Printed Terry Finishing v. City of Lebanon*, 247 Pa.Super. 277, 299, 372 A.2d 460, 471 (1977), quoting *California Fruit Exchange v. Henry*, 89 F.Supp. 580, 588–89 (W.D.Pa.1950)). Therefore, when a communication or contact has occurred between a juror and a witness, prejudice may be inferred at the discretion of the trial judge. In order to rebut the inference, the communication must be explained and shown to be harmless. *Id.*

■ In the instant case, an important Commonwealth witness engaged in an *ex parte* conversation with a juror who later served as foreman of the jury. The witness, Sergeant Lewis Wilson, was not only one of the arresting officers, but was also directly involved in the altercation which led to the charges upon which Appellant was convicted. Since there were no corroborating eye witnesses, the case turned on a credibility determination between Appellant and the two police officers.

The conversation between Sergeant Wilson and the juror amounted to more than a brief, incidental contact. The two engaged in a dialogue in which the juror conveyed the fact that he was from West Caln and was a friend of the Chief of Police in that municipality. Sergeant Wilson then complimented the juror on the quality of his hometown police department.

In *State v. Pike*, 712 P.2d 277 (Utah 1985), the Supreme Court of Utah addressed the propriety of contact between jurors and witnesses. In *Pike*, the arresting officer in the case engaged in a conversation with three jurors in the hall of the courthouse during a recess. In response to a question from one of the jurors as to why he was limping, the officer indicated that he was injured when he slipped while cleaning his backyard patio. *Id.* at 279. In overturning the conviction, the Supreme Court of Utah stated:

Due consideration for the potential and often unprovable tainting of a juror by contacts between jurors and others involved in a trial that are more than brief and inadvertent encounters, leads us to reaffirm the proposition that a rebuttable presumption of prejudice arises from any unauthorized contact during a trial between witnesses, attorneys or court personnel and jurors which goes beyond a mere incidental, unintended, and brief contact. The possibility that improper contacts may influence a juror in ways he or she may not even be able to recognize and that a defendant may be left with questions as to the impartiality of the jury, leads to the conclusion that when the contact is more than incidental, the burden is on the prosecution to prove that the unauthorized contact did not influence the juror.

*Id.* at 280.

Although we diverge from the "rebuttable presumption of prejudice" rule used by the Court in *Pike,* we agree with the view that a juror may be subject to a subconscious influence or bias as a result of an unexpected cordial encounter with a witness. This subconscious influence may have the improper effect of enhancing the credibility of the witness in the eyes of that juror.

In the instant case, the trial judge never questioned the juror about any possible taint which may have resulted from his conversation with Sergeant Lewis. Instead, defense counsel was given the opportunity to call witnesses in support of his Motion to Disqualify the Juror. This placed defense counsel in the difficult position of deciding whether to avoid questioning the juror or run the risk of antagonizing a juror who might remain to decide his client's fate. The juror was never called as a witness by either side at the *voir dire* hearing on the Motion. Without the juror's testimony, the trial judge was not in a position to determine that the encounter between Sergeant Wilson and the juror amounted to harmless error. Consequently, the trial judge's denial of Appellant's Motion to Disqualify the Juror was an abuse of discretion.

■ In *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), this Court stated that "an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction' the error is not harmless." *Id.* at 409, 383 A.2d at 164 (citing *Commonwealth v. Davis*, 452 Pa. 171, 178, 305 A.2d 715, 719 (1973)). Further, a *Story* analysis must be utilized in a case involving *ex parte* juror communication. *Commonwealth v. Elmore*, 508 Pa. 81, 84, 494 A.2d 1050, 1052 (1985).

We, therefore, cannot say with any degree of certainty that the contact did not establish a rapport, albeit unconscious, between Sergeant Wilson and the jury foreman which in some way influenced the outcome of the trial.

Accordingly, the Order of the Superior Court is reversed, the judgment of sentence is vacated, and Appellant is granted a new trial.

LARSEN, J., did not participate in the decision of this case.

CAPPY, J., files a concurring opinion.

PAPADAKOS, J., files a dissenting opinion.

CAPPY, Justice, concurring.

I agree with the result reached by the Majority. However, I believe that the Majority's approach—that prejudice "may be inferred at the *discretion* of the trial judge"—allows for too much arbitrariness in the trial judge's exercise of his or her discretion. I would hold that prejudice will be inferred whenever a communication or contact has occurred between a juror and a Commonwealth witness, this inference rising to a "rebuttable presumption" in favor of the accused which the Commonwealth must then overcome.

PAPADAKOS, Justice, dissenting.

The majority says that we do not have a per se rule in Pennsylvania which requires the disqualification of a jury

anytime there is ex parte contact between that juror and a witness. (Majority Opinion, at p. 555). Having read the majority opinion, that proposition is of questionable viability. The majority also says that under our law there must be a showing that the contact between a member of the jury and an officer of the court resulted in "a reasonable likelihood of prejudice to the defendant." (Majority Opinion, at p. 555). But who is required to establish this prejudice?

The majority criticizes the trial judge in this case who, having been asked by the Appellant to dismiss a juror whom he felt was tainted by an improper contact with a witness, held a hearing to allow the Appellant to establish this element of prejudice and, based on the evidence presented by the parties, found as a fact that the complained of contact was, as most, harmless to the defense. The majority then reverses the findings of the trial judge and grants a new trial because of some imagined speculative subconscious influence that might have crept into the juror's being during the short conversation and because the trial judge did not call on the juror to satisfy himself that no such bias was present.

Whether such an insidious taint was perpetrated on this witness was for Appellant to establish at the hearing on his Motion to Dismiss this particular juror and not a task for the trial judge. The majority excuses defense counsel for his failure to call the juror because it could have put him in the difficult position of deciding whether to avoid questioning the juror or run the risk of antagonizing a juror who might remain to decide his client's fate. That's what we call trial strategy and it justifies trial counsel's decision not to call a particular witness and to live with the consequences of his choice, but I did not know until today that it shifts the burden to the trial court to call the witness and ferret out the information for him.

I believe that trial counsel had every opportunity to establish his claim of prejudice and, based on the record created, the findings are supportable and cannot be reversed. If, however, the majority insists on interjecting this new requirement into these proceedings, then, at the very least, this

matter should be remanded so that the trial court can hold a hearing to establish whether the juror was indelibly marked by this sixty second conversation with Sergeant Wilson. I am sure that the passage of two and one half years will not have taken away the memory of that event and its effect on the juror's psyche. Furthermore, if there is a subconscious taint, I doubt that the witness would be consciously aware of it. I guess a psychiatrist will have to be called in at taxpayer's expense to delve into the subconscious of the witness. I dissent.