665 A.2d 1239

COMMONWEALTH of Pennsylvania

v.

George RUSSELL, Appellant.

COMMONWEALTH of Pennsylvania

v.

Kevin CLEVELAND, Appellant.

COMMONWEALTH of Pennsylvania

v.

Prince HAGWOOD, Appellant.

Superior Court of Pennsylvania.

Argued May 25, 1995.

Filed Sept. 29, 1995.

512

514

Daniel A. Rendine, Philadelphia, for George Russell.

Brian McMonagle, Philadelphia, for Kevin Cleveland. (Submitted)

Thomas W. Moore, Philadelphia, for Prince Hagwood. (Submitted)

Joan Weiner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Kathy L. Echternach, Assistant District Attorney, Philadelphia, for Commonwealth, appellee. (Submitted)

Before CAVANAUGH, CIRILLO and HESTER, JJ.

CIRILLO, Judge:

Appellants George Russell, Kevin Cleveland, and Prince Hagwood appeal from their respective judgments of sentence [1] entered in the Court of Common Pleas of Philadelphia County. We affirm.

On September 15 and 16, 1990, Russell was involved in several arguments with his cousins, Ronald Bradley and Joseph Bradley. One of the arguments culminated in a gunshot wound to Russell's foot. This series of confrontations climaxed on the morning of September 17, 1990, when the appellants opened fire on Ronald and Joseph Bradley as they stood outside their mother's house.

Several people witnessed this shooting and testified at trial that the appellants assembled near the Bradleys' mother's home at approximately 10:30 a.m. Aaron Hainey, who was also with the appellants, confronted Ronald and Joseph Bradley. While they were talking, appellant Clark Henderson drew a weapon and began shooting.[2] All of the appellants then opened fire in the direction of the Bradleys; thirty-five to forty shots were fired.

When the shooting concluded, appellants assisted the wounded Aaron Hainey into a car and fled the scene. Ronald Bradley and Aaron Hainey died as a result of their injuries. Joseph Bradley was also wounded; he spent six weeks hospitalized in intensive care and eventually recovered.

Following a jury trial,[3] Kevin Cleveland was convicted of possession of an instrument of crime and conspiracy. Prince Hagwood and George Russell were both convicted of first-degree murder, third-degree murder, aggravated assault, possession of an instrument of crime, and conspiracy.

1. These three cases were appealed separately. Because they all arise from the same set of facts and raise similar issues, this court, in its discretion, has consolidated these three appeals. See Pa.R.A.P. 513.

2. Henderson apparently shot Aaron Hainey, his brother, by mistake.

3. Appellants were tried with co-defendants Clark Henderson, John C. Kennedy, Denovian Royster, and Walter Royster. This appeal arises out of the appellants' second trial. The first trial ended in the granting of a defense motion for a mistrial.

After the verdicts were read, appellant Clark Henderson, in the presence of the jury, stood up and alleged that his co-defendant, Denovian Royster, had paid a bribe to a juror in return for a not guilty verdict.[4] Post-verdict motions were filed and denied.[5]

Kevin Cleveland was sentenced to not less than five nor more than ten years for conspiracy and to a concurrent sentence of not less than two-and-one-half nor more than five years for possessing an instrument of crime. Prince Hagwood and George Russell were each sentenced to life imprisonment for first-degree murder and to consecutive sentences of ten to twenty years for third-degree murder. Hagwood and Russell also received concurrent sentences of five to ten years for aggravated assault, two and one-half to five years for possessing an instrument of crime, and five to ten years for conspiracy.

Cleveland, Hagwood and Russell filed timely notices of appeal. They each raise the following claims for our review:

1. Is the appellant entitled to a new trial on account of allegations of jury tampering?

2. Did the court err in denying appellant's motion to dismiss which had as its basis his right not to be placed in jeopardy twice where the prosecutor acted in bad faith by deliberately withholding evidence, and by misleading counsel and the court and in doing so committed acts requiring the court to declare a mistrial during appellant's first trial?

3. Did the court err in permitting the introduction of a photograph of a wall containing various names and prejudicial phrases?

4. Is a new trial required on account of the failure of the trial court to reveal immediately that a juror had been

4. This necessitated the impaneling of a new jury to consider the penalty phase for the first-degree murder conviction of Clark Henderson, Prince Hagwood and George Russell.

5. In addition to the motion to dismiss due to juror misconduct, a special investigating grand jury considered allegations of jury tampering and juror misconduct. The grand jury recommended that no charges be filed.

threatened and due to *ex parte* contact between the court and jury?

In addition, Hagwood and Russell raise the following claim on appeal:

1. Did the court err in permitting Yolanda Tate to testify that she moved after the incident thereby permitting the jury to infer that she did so out of fear of the defendant?

Finally, Cleveland raises the following claims for our review:

1. Was the evidence sufficient to support the appellant's conspiracy conviction?

2. Was the verdict against the weight of the evidence?

■ This court has long recognized that upholding the sanctity of the jury system is a matter of utmost importance in our system of justice. *Colosimo v. Pennsylvania Electric Co.*, 337 Pa.Super. 363, 369, 486 A.2d 1378, 1381 (1984); *Mix v. North American Co.*, 209 Pa. 636, 59 A. 272 (1904). Faith in juries must remain intact "else confidence in the system which is the best achievement of civilization will be lost." *Mix*, 209 Pa. at 645, 59 A. at 274–75. In keeping with this principle, this court has held that any inappropriate contact with the jury about the matter before them automatically creates a " 'reasonable likelihood' of prejudice." *Commonwealth v. Syre*, 348 Pa.Super. 110, 114, 501 A.2d 671, 673 (1985) *rev'd on other grounds*, 513 Pa. 1, 518 A.2d 535 (1986).

■ However, another principle of law must be considered before we address appellants' first claim of error. The courts of this Commonwealth have long recognized, most recently in *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420 (1994), that this court may not substitute its judgment for that of the fact finder. "When the evidence supports the factual findings [of the trial court], we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous." *Williams*, 539 Pa. at 71–2, 650 A.2d at 426. *Accord: Commonwealth v. Medley*, 531 Pa. 279, 612 A.2d 430 (1992); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976). This Court has further stated:

The refusal of a new trial on the grounds of alleged misconduct of a juror is largely within the discretion of the trial judge. When the facts surrounding the possible misconduct are in dispute, the trial judge should examine the various witnesses on the question, and his findings of fact will be sustained unless there is an abuse of discretion.

*Commonwealth v. Posavek,* 278 Pa.Super. 265, 274, 420 A.2d 532, 537 (1980) (citations omitted).

■ The allegations of juror misconduct or tampering necessitating this appeal involved a purported scheme by juror Willie Mae Moye and a friend, Cynthia Torrence, to extort money from the defendants in return for favorable verdicts. At the post-verdict motions hearing, co-defendant Denovian Royster testified that early in the trial he noticed a woman in the courtroom and later contacted her by phone. He further testified that during several conversations, the woman, Torrence, explained that she had a friend on the jury, Moye, and that if Royster and his co-defendants did not pay them $5,000.00, the jury would convict all of them.

Denovian Royster contends that he pleaded with Ms. Torrence to tell Ms. Moye that he did not have any money and that she should just decide the case on the evidence. Despite his purported concern, Royster completely neglected to tell his attorney about the alleged plot.

In contrast, Willie Mae Moye testified at the post-verdict motion hearing that she had never spoken to any of the defendants and that she had never asked any of the defendants for money. In addition, she stated that although she had spoken to Torrence before and during the trial, it was always about matters unrelated to the trial. When Torrence did ask questions about the trial, Moye testified that she told her that she could not discuss it, but because the courtroom was open to the public, Torrence could come to City Hall to observe.

We cannot determine from the cold record before us what actually transpired with regard to the allegations of jury tampering, or whether it had an adverse effect on the verdict.

Denovian Royster's testimony at the post-verdict motions hearing directly contradicted that of Willie Mae Moye and her alleged accomplice. Judge O'Keefe, however, had a first-hand impression of the demeanor of each witness. It is his determination, as fact finder, to which we defer. Judge O'Keefe found Denovian Royster's testimony, as well as that of his cousin, not credible, noting that they had an obvious motive to lie. The implicated juror, Willie Mae Moye, also testified before Judge O'Keefe. Judge O'Keefe commented that her testimony was more credible. Two additional jurors testified at the post-trial hearing; they stated that they had witnessed contact between Moye and Torrence. Judge O'Keefe found that their testimony, however, demonstrated no misconduct on Moye's part.

After carefully examining all of the evidence, Judge O'Keefe concluded that the allegations of misconduct involving Willie Mae Moye were completely unsubstantiated.[6] Based on the testimony of the three jurors, Judge O'Keefe also concluded that there were no outside influences affecting the jury that would have possibly impaired the jury's ability to return a fair verdict based upon the evidence. Finding no error of law or abuse of discretion in Judge O'Keefe's reasoning, we find that the appellants' first claim is meritless. *Williams, supra; Posavek, supra.*

Next, appellant's argue that a series of prosecutorial actions entitle them to dismissal of the charges. Appellants rely upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992).

In *Smith*, the Court addressed the issue of when prosecutorial misconduct acts as a double jeopardy bar to retrial of an accused. The *Smith* Court held that the Pennsylvania Constitution's double jeopardy clause prohibits retrial where: 1) the prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial; or, 2) when the prosecutorial misconduct is intentionally undertaken to preju-

---

6. In addition to the evidence presented at the post-verdict hearing, Judge O'Keefe had both the trial record and a record of the grand jury investigation upon which to base his decision.

dice the defendant to the point of denial of a fair trial. *Id.* at 184–86, 615 A.2d at 325.

In *Smith,* the prosecutor had intentionally withheld exculpatory evidence, deliberately concealing it for more than two years following trial. *Id.* at 181–83, 615 A.2d at 323. "Similarly, the Commonwealth deliberately denied the existence of the agreement pursuant to which its witness ... received extremely lenient treatment at his sentencing in return for his testimony against appellant." *Id.*

■ Here, appellants argue that the prosecutor intentionally withheld exculpatory information concerning favorable treatment given to Commonwealth witnesses Joseph Bradley and Robert Stewart. Appellants contend that this deprived them of significant material for cross-examination. Appellants further contend that the prosecutor falsely denied that other plea agreements had been made with Joseph Bradley and Robert Stewart in exchange for their testimony in the case.

As to Bradley, the alleged "deal" related to federal court sentencing on charges unrelated to this case. This matter, however, has been closely reviewed, and we agree with the trial court's conclusion that the Commonwealth has been "entirely forthright." Thus, although it is clear that Philadelphia homicide detective, James Dougherty, did respond to inquiries from federal prosecutor, Robert Zauzner, there is no evidence that any plea arrangement was made in favor of Joseph Bradley in the federal proceedings. In fact, at federal sentencing, the government's recommendation was for an *upward* departure from the applicable guidelines. Bradley, himself, denied that he was the beneficiary of any deal. We find, as did the trial court, that the *Smith* case is inapplicable here. There is simply no basis for concluding that the Commonwealth withheld any information pertaining to a sentencing arrangement.

Similarly, as to Robert Stewart, it is asserted that the "deal" related to his future sentencing on several robbery charges in Philadelphia Common Pleas Court. Again, no evidence was presented that a sentencing deal had been

arranged—only that Stewart's cooperation in another case would be made known to the sentencing court at the appropriate time. As to the other charges against both Bradley and Stewart, appellants had the benefit of fully exploring and arguing the full circumstances of any prosecutorial interaction. These arguments, however, fall woefully short of any serious suspicion that there was conduct which would prejudice him "to the point of the denial of a fair trial." *Smith,* 532 Pa. at 186, 615 A.2d at 325.

Next in the litany of double jeopardy claims is the testimony of Detective Oscar Jones relative to statements taken from Joseph Bradley. The Commonwealth attempted to elicit information as to two of Bradley's statements, one given on September 23 and one given on November 13, 1990. A hearing was conducted, which resulted in a mistrial.

Appellants articulate no argument on this issue, but simply refer us to the notes of testimony. This somewhat cavalier approach to appellate advocacy is plainly inadequate, and warrants dismissal of the claim. *See Commonwealth v. Brown,* 538 Pa. 410, 648 A.2d 1177 (1994); *Commonwealth v. Mercado,* 437 Pa.Super. 228, 649 A.2d 946 (1994); *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993). Nevertheless, upon review of the circumstances, we must agree with the conclusion of Judge O'Keefe, who opined: "The Commonwealth neither intended to provoke the defendant into requesting a mistrial, nor to prejudice the defendant to the point of denial of a fair trial." The record supports the conclusion that failure to provide the questioned material was wholly inadvertent.

Lastly, appellants allude to various aspects of the testimony which were unfavorable to them, suggesting that they were illustrative of misconduct which entitles them to a double jeopardy bar of retrial. They further suggest that we review the trial "in toto" in order to determine the presence of prosecutorial misconduct which rose to a degree that deprived them of a fair trial. We find nothing in the *Smith* decision which would justify such an undertaking here. When viewed

separately or collectively, we find no conduct on the part of the prosecution which was intended to provoke the defendants into moving for a mistrial or which was intentionally undertaken to prejudice the defendants to the point of denial of a fair trial. *Smith,* 532 Pa. at 184–86, 615 A.2d at 325.

Next, appellants claim that a new trial is required because the trial court failed to immediately reveal that a juror had been threatened during the second week of the trial. Appellants contend that by waiting to reveal this information, the court allowed the jury to become polluted and incapable of rendering a fair verdict. We disagree.

The incident to which appellants refer occurred when a juror informed the court that she thought she was being followed. The court took no action at that time, but monitored the situation. One week later, the same juror told the court that she had been confronted outside of court and was told "... well, I hope you make the right decision for your own good."

At this point, all attorneys were notified and the juror was questioned. Two other jurors, in whom the affected juror had confided, were also questioned. The trial court then questioned the remaining jury members in an attempt to illicit whether any incident involving a fellow jury member had affected his or her ability to render a fair and just verdict.

The record indicates that the threatened juror and the two jurors in whom she had confided were extensively questioned and then dismissed from the case. Their testimony indicated that the remaining jury members had not been tainted.

The questioning of the rest of the jury was limited to broad questions that would not reveal the incident involving their fellow juror. This questioning amply demonstrated both the jury's ability to be fair and impartial, and that no "fixed bias was planted in the mind of any juror to require a mistrial." *Commonwealth v. Lee,* 261 Pa.Super 48, 51, 395 A.2d 935, 937 (1978).

■ Appellants also complain that the trial court had *ex parte* communications with the threatened juror during the time that she was threatened. Such communications would constitute reversible error only if the communications were likely to cause prejudice. *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983). Appellants have failed to meet this burden.

Appellants next contend that the trial court erred in permitting the introduction of a photograph of a wall containing various names and prejudicial phrases. This claim is meritless.

■ The Supreme Court of this Commonwealth has held that "the admission of evidence is a matter vested in the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion." *Commonwealth v. Seiders,* 531 Pa. 592, 596, 614 A.2d 689, 691 (1992); *Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176 (1985).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Relevant evidence is usually probative. However, to be admissible its probative value must outweigh its prejudicial effect.

*Commonwealth v. Urrutia,* 439 Pa.Super. 227, 235, 653 A.2d 706, 710 (1995) (citations omitted).

■ The picture in question depicted a graffiti-filled brick wall in the area where the shootings occurred. On the wall, grouped together in a separate area, was a list of names that included the nicknames of appellants Russell and Cleveland. The picture was relevant to prove the Commonwealth's charge that the appellants were associates who had conspired to commit murder, and not just a group of strangers who were in the same place, at the same time, by chance, when the shootings took place.

Appellants also argue that they were prejudiced by the photograph, which allowed the jury to infer that there was a connection between the appellants because their names happened to be grouped together on the wall. We disagree. The Commonwealth was attempting to prove a connection or relationship between the appellants to support the charge of criminal conspiracy. The fact that the evidence furnished proof of a conspiracy, albeit deleterious to appellant's effort to avoid a guilty verdict, does not render the evidence inadmissible. *Commonwealth v. Green*, 477 Pa. 170, 176, 383 A.2d 877, 880 (1978) (fact that evidence is harmful to defense is not sufficient reason to exclude evidence).

Appellants next claim that the trial court erred in permitting Yolanda Tate, an eyewitness to the shooting, to testify that she had moved after the shooting. The appellants' argument on this issue, however, is limited to a brief discussion of why appellants feel that Ms. Tate's testimony warrants a new trial, and contains no citation to relevant authorities. Appellants have neglected to include discussion or citation to authority. *See* Pa.R.A.P. 2119(b); *see also Commonwealth v. Rodgers*, 413 Pa.Super. 498, 605 A.2d 1228 (1992). Consequently, we are unable to review this claim. *See* Pa.R.A.P. 2101.

Next, appellant Cleveland contends that the evidence produced at trial was insufficient to support the conspiracy conviction against him.[7]

[I]t is well established that an appellate court must determine whether the evidence was sufficient to enable the jury to find every element of the crime charged beyond a reasonable doubt, viewing all the evidence and reasonable infer-

7. Under 18 Pa.C.S.A. § 903(a)(1),

[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime ...

ences therefrom in the light most favorable to the verdict winner.

*Commonwealth v. Zimmick,* 539 Pa. 548, 554, 653 A.2d 1217, 1220 (1995) (citing *Commonwealth v. Thomas,* 527 Pa. 511, 594 A.2d 300 (1991)).

In order to prove the crime of criminal conspiracy, the Commonwealth must present evidence of an agreement to commit a crime. *Commonwealth v. Keefer,* 338 Pa.Super. 184, 487 A.2d 915 (1985). A conspiracy may, however, be proven inferentially by demonstrating the relation, conduct, or circumstances of the alleged co-conspirators. *Commonwealth v. Nelson,* 399 Pa.Super. 618, 582 A.2d 1115 (1990) ("[o]vert acts of alleged co-conspirators are competent as proof of the conspiracy"), *allocatur denied,* 527 Pa. 664, 593 A.2d 840 (1991).

Here, victim Joseph Bradley and numerous eyewitnesses testified that they saw a group of men, including Cleveland, assemble outside his mother's home, converse among themselves, commence shooting, and then flee the scene together. This evidence, viewed in the light most favorable to the Commonwealth, is sufficient to prove criminal conspiracy beyond a reasonable doubt. *Zimmick, supra; Keefer, supra.* Cleveland's claim of error, therefore, must fail.

Finally, Cleveland challenges the verdicts on the grounds that they were against the weight of the evidence. In support of this claim, Cleveland states that Commonwealth witness, Robert Stewart, an eyewitness to the shooting, was not a credible witness because: (1) he had a motive to fabricate testimony, (2) he is a convicted felon, (3) his testimony was inconsistent, and (4) he did not identify himself to police until one year after the shooting.

Where issues of credibility and weight are concerned, it is not the function of an appellate court to substitute its judgment for that of the trial court. *Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); *McElrath v. Commonwealth,* 405 Pa.Super. 431, 443, 592 A.2d 740, 745

(1991). A new trial is warranted on a challenge to the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. *McElrath* at 441–43, 592 A.2d at 745. Furthermore, issues of credibility are left to the trier of fact; the jury is free to accept all, part, or none of the witness testimony. *Commonwealth v. Pirela*, 398 Pa.Super. 76, 580 A.2d 848 (1990), *allocatur denied*, 527 Pa. 672, 594 A.2d 658 (1991); *Commonwealth v. Vitacolonna*, 297 Pa.Super. 284, 443 A.2d 838 (1982).

Additionally, where evidence is conflicting, the credibility of the witnesses is solely for the jury. *Commonwealth v. Manchas*, 430 Pa.Super. 63, 633 A.2d 618 (1993). If the jury's determination is supported by the record, the verdict will not be disturbed. *Id.*

Here, the issue of Robert Stewart's credibility was within the sole discretion of the jury, and they chose to believe his testimony. After a close reading of the record, we find that the contradictions in Stewart's testimony do not rise to such a level as to shock this court's sense of justice. *McElrath, supra.* Given our restricted review on matters pertaining to credibility, *Pirela, supra,* we conclude that appellants are not entitled to relief on this claim.

Judgments of sentence affirmed.