J-S68004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAIRI HARRIS, | |
| Appellant | No. 1662 EDA 2013 |

Appeal from the Judgment of Sentence entered January 28, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0000498-2012

BEFORE: ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED NOVEMBER 14, 2014**

Kairi Harris ("Appellant") appeals from the judgment of sentence entered after a jury found him guilty of attempted murder, aggravated assault, conspiracy to commit murder, conspiracy to commit aggravated assault, possession of a firearm by a prohibited person, possession of a firearm without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime.[1]

The trial court detailed the pertinent facts as follows:

> [Appellant] and his cousin were sitting outside [Appellant's] house at 441 E. Rittenhouse Street in Philadelphia on the afternoon of December 23, 2011. While they were sitting on the porch, Durrell Hall and Samuel Evans drove by [Appellant's] house in a vehicle. When their vehicle reached the

---

[1] 18 Pa.C.S.A. §§ 901(a), 2502(a), 2702(a); 903, 6105(a), 6106(a)(1), 6018, and 907(a).

stop sign directly in front of [Appellant's] house, [Appellant] and his cousin opened fire at Hall and Evans who were inside the vehicle. As the vehicle sped away eastbound on Morton Street, [Appellant] and his cousin continued to fire at the vehicle. Hall and Evans were sitting in the front seats of the vehicle. [Appellant] and his cousin fired a total of 12 shots from two guns: ten .40 caliber rounds and two 9 millimeter rounds.

At least one of the bullets did not hit the intended victims or the vehicle. Instead, this stray bullet sailed halfway down the block and entered the second floor window of the residence of Gwendolyn Knox, who lived at 5817 Morton Street. Knox was in her upstairs bedroom watching over a one-year old child when she heard the gunshots. As Knox sat up in her bed, the stray bullet struck her in her face. The bullet entered Knox's jaw, travelled through her head and neck, and ultimately lodged in her spine. Police officers carried Knox down her steps in a bed sheet and rushed her to the Albert Einstein Medical Center. Knox entered the hospital in critical condition, and she spent nearly two weeks there in recovery. Knox suffered fractured vertebrae at the base and center of her neck, painful and permanent nerve damage, a broken jaw in two places, a severed artery in her neck, and a non-paralytic stroke. Doctors placed a stent in her neck to repair her severed artery. Doctors removed the bullet ten months later. Knox still receives therapeutic services as a result of her injuries.

Immediately after the shooting, [Appellant] and his cousin ran into [Appellant's] house. A few minutes later, a car pulled up to [Appellant's] house and picked up both [Appellant] and his cousin who then fled the scene of the shooting.

...

Otis Thompson was the only eyewitness who testified at trial. Thompson knew [Appellant], his cousin, and the intended shooting victims (Durrell Hall and Samuel Evans) from previous encounters in the neighborhood over the past fifteen years. Thompson never had a problem with [Appellant] or his cousin, and in fact, considered them as friends. At the time of the shooting, Thompson was sitting across the street by a statue and observed the entire shooting from the beginning (Hall and Evans driving towards [Appellant's] house) to the end ([Appellant] and his cousin getting into a car and fleeing the scene). The

shooting occurred in broad daylight, and nothing obstructed Thompson's view of the shooting.

At trial, Thompson testified that:

- He heard 12 shots, which was the exact same number of fired cartridge cases recovered by detectives at the scene.

- One week before the shooting, [Appellant] showed Thompson a 9 mm Taurus gun, which was the same caliber as two of the fired cartridge cases recovered from the scene of the shooting.

- Around the time of the shooting, males from Mechanic Street were "beefing" with the males from Rittenhouse Street because Durrell Hall (one of the intended shooting victims in the vehicle) owed money to [Appellant].

A few hours after the shooting on December 23, 2011, Thompson was arrested for illegally possessing a gun. Approximately 12 hours after the shooting and while he was in custody for his own gun case, Thompson gave a statement to detectives implicating [Appellant] and [Appellant's] cousin in the shooting. Thompson testified that the District Attorney's office and detectives made no promises to him in exchange for any of his statements to detectives or his testimony in court. Following Thompson's statement, detectives said they would try to move Thompson to a different county prison due to Thompson's concern regarding witness intimidation. On the date he was arrested for his gun case, Thompson was on probation for another gun case. The parties stipulated that the gun allegedly possessed by Thompson on the night of December 23, 2011, was not the same caliber of gun as the 12 fired cartridge casings recovered from the shooting.

...

While [Appellant] was incarcerated, [Appellant] made numerous phone calls from the prison, which were recorded and introduced as evidence at trial. Among other things, [Appellant] made phone calls attempting to locate Thompson in the prison system and describing threats made from the audience to Thompson during the preliminary hearing. Among other things

- 3 -

captured on audiotape, [Appellant] was upset that Thompson was talking to the detectives....

Trial Court Opinion, 1/2/14, at 1-4 (emphasis in original) (footnotes and citations to notes of testimony omitted).

Appellant was charged with the aforementioned crimes, and a jury trial commenced on November 6, 2012. The jury returned its guilty verdicts on November 9, 2012.

On January 28, 2013, following a hearing, the trial court sentenced Appellant to 25 to 50 years of imprisonment. Appellant filed post-sentence motions on January 30, 2013, which the trial court denied on May 17, 2013. Appellant filed a notice of appeal on June 6, 2013. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. DID THE COMMONWEALTH PROVE BEYOND A REASONABLE DOUBT THE ELEMENT OF EACH CRIME THAT APPELLANT WAS CONVICTED OF?

2. WAS APPELLANT'S CONVICTION AGAINST THE WEIGHT OF THE EVIDENCE?

3. DID THE TRIAL COURT ISSUE A GREATER SENTENCE THAN NECESSARY?

Appellant's Brief at 3.

In his first issue, Appellant argues that the evidence was insufficient to support the guilty verdicts. Appellant's Brief at 18-27.

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most

favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Emler***, 903 A.2d 1273, 1276–77 (Pa. Super. 2006).

Appellant was found guilty of attempted murder, conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, three violations of the Uniform Firearms Act, and possession of an instrument of crime.

With regard to his convictions for attempted murder and aggravated assault, Appellant argues that the testimony of Mr. Thompson was not sufficient to support his convictions. Appellant's Brief at 19-21. We disagree.

"A person commits an attempt when with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). "A person may be convicted of attempted murder 'if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act.'" ***Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa. Super. 2008)

(citations omitted). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *In re R.D.*, 44 A.3d 657, 678 (Pa. Super. 2012) (citations omitted). "The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence. [T]he law permits the fact finder to infer that one intends the natural and probable consequences of his acts[.]" *Jackson*, 655 A.2d at 444 (citations and internal quotations omitted).

Here, in order to sustain the aggravated assault conviction, the Commonwealth was required to demonstrate that Appellant "attempt[ed] to cause serious bodily injury to another, or caused such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(1(a)(1). With regard to Appellant's convictions for attempted murder and aggravated assault, the doctrine of "transferred intent" which has been codified in this Commonwealth, provides:

> (**b**) **Divergence between result designed or contemplated and actual result.**—When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:
>
> > (1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or

contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S.A. § 303(b).

The trial court, finding the evidence sufficient to support Appellant's attempted murder conviction, explained:

[T]he evidence of record establishes that [Appellant] and his cousin fired 12 shots at two intended victims, Hall and Evans. They pumped 12 shots into the vehicle in broad daylight from a few feet away and didn't stop shooting until it sped away. The bullets hit the front passenger side window, the passenger side panel, and the rear of the vehicle. Given, *inter alia*, the firing of two guns in close proximity to the vehicle, the location of where the bullets entered the vehicle (i.e. where the intended victims Hall and Evans were seated), the number of shots fired (i.e. more than necessary to simply injure a person), and that the shooting only ended because the vehicle fled the scene, there is sufficient evidence to prove beyond a reasonable doubt that [Appellant] specifically intended to commit a murder and that he committed a substantial act to complete that crime. Although his intended victims Hall and Evans were not injured, [Appellant's] intent transferred to his ultimate victim, Gwendolyn Knox.

[Appellant's] specific intent to kill is corroborated by his phone conversations, which were taped and admitted into evidence. Specifically, [Appellant's] statements demonstrate his consciousness of guilt as well as his intent, motive, and malice underlying both the shooting and his attempts to locate and intimidate Thompson.

Moreover, the jury obviously found Thompson's testimony as credible, which was reasonable given that his testimony regarding the number of shots fired was corroborated by the actual physical evidence recovered at the scene, *i.e.*, 12 fired cartridge casings. Thompson not only never wavered on the

identity of [Appellant] as one of the shooters, but also testified that [Appellant] showed him a handgun a week before the shooting that was of the same caliber as two of the fired cartridge casings recovered from the scene. Thompson testified that [Appellant] and the intended victims were "beefing" over money owed by one of the intended victims to [Appellant]. Last, notwithstanding the substantial lines of impeachment and potential bias that were the focus of Thompson's cross-examination, such arguments were not availing with the jury.

Most telling of all the evidence that supports the credibility of Thompson's testimony are [Appellant's] own words: [Appellant] repeatedly stated that Thompson was "telling" and was "ratting." The jury presumably found as reasonable the prosecutor's suggested inference that [Appellant's] words indicated that Thompson was "telling" the truth. In other words, if [Appellant] thought that Thompson a lying, then presumably he would have said, "Why is Thompson lying? Why is he making this up."

Thus, in light of the overwhelming evidence introduced at trial, there was sufficient evidence at trial to support [Appellant's] conviction for attempted murder. [F.N. 2. Because there was sufficient evidence of the attempted murder, there is also sufficient evidence of the aggravated assault conviction.]

Trial Court Opinion, 1/2/14 at 5-7 (citation to case law omitted).

Our review of the record supports the trial court's determination that the evidence was sufficient to support Appellant's attempted murder conviction, as well as his aggravated assault conviction. Otis Thompson testified credibly at trial that on December 23, 2011, Appellant and his cousin were standing on the sidewalk in front of 441 E. Rittenhouse Street when the victims drove past them in an SUV whereupon Appellant and his cousin both began shooting at the intended victims' car, and continued shooting as the car drove away. N.T., 11/7/12, at 54-55, 60-61. Mr.

Thompson additionally testified that in the week prior to the shooting, Appellant had shown him a Taurus 9 mm handgun. *Id*. at 42-43, 46-48. Mr. Thompson's testimony was bolstered by additional testimony by Commonwealth witnesses that 9 mm cartridge casings were found outside 441 E. Rittenhouse Street, and by the evidence of Appellant's recorded telephone conversations criticizing Mr. Thompson for telling on him. Moreover, the Commonwealth presented evidence that Gwendolyn Knox suffered a gunshot injury to her face and neck on December 23, 2013 at approximately 2:50 p.m., the same time that Appellant was seen firing a weapon down the street in the direction of 5817 Morton Street where Ms. Knox resided. N.T., 11/6/12 at 62-65; 92. The Commonwealth presented evidence that the bullet that struck Ms. Knox travelled into her home through a second floor window, entering her jaw. N.T., 11/8/12, at 184. As a result of the gunshot injury, Ms. Knox suffered damage to her carotid artery, cervical vertebrae, bleeding of the brain, hypertension, and a non-paralytic stroke. *Id*. at 78. We agree with the trial court that the foregoing evidence and testimony was sufficient to support both Appellant's attempted murder and aggravated assault convictions.

Additionally, the trial court found the evidence sufficient to sustain Appellant's conspiracy convictions. In order to sustain a criminal conspiracy conviction, the Commonwealth must prove: "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt

act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." ***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa. Super. 2013) (citations omitted). Here, the evidence was sufficient to support the conviction. As the trial court explained:

> As summarized above, [Appellant] and his cousin: (1) both fired guns at the same vehicle from the same location; (2) both continued firing at the passengers as the vehicle sped away; (3) both ran into [Appellant's] house after the shooting; and (4) both exited the house and fled the scene in the same vehicle. Therefore, there was sufficient evidence at trial to support [Appellant's] convictions for criminal conspiracy to commit murder and aggravated assault.

Trial Court Opinion, 1/2/14 at 7. We agree with the trial court that this evidence was sufficient to support Appellant's conspiracy convictions.

With regard to Appellant's remaining convictions for violating the uniform firearms act and possessing an instrument of crime, we find no error in the trial court's determinations that the evidence was sufficient to support those convictions.

18 Pa.C.S.A. § 6105(a) of the Uniform Firearms Act prohibits a person who has been convicted of certain offenses enumerated in § 6105(b) or whose conduct meets the criteria enumerated in subsection § 6105(c), from possessing a firearm in this Commonwealth.

18 Pa.C.S.A.§ 6106(a)(1) provides: "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree."

18 Pa.C.S.A. § 6108 provides:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1)     such person is licensed to carry a firearm; or

(2)     such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

Finally, to sustain a conviction for possession of an instrument of crime, the Commonwealth was required to establish that Appellant "possesse[d] any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a).

The trial court, finding the evidence sufficient to sustain these convictions explained:

> [T]he sole eyewitness, Otis Thompson, testified that [Appellant] possessed a firearm and fired it several times at a vehicle. This evidence is sufficient to find that [Appellant] possessed an operable firearm even though no firearm was recovered. Indeed, Pennsylvania caselaw provides that the elements of possession and operability of a firearm may be established by the testimony of witnesses who observed the defendant with a firearm. **Commonwealth v. Robinson**, 817 A.2d 1153, 1161 (Pa. Super. 2013) ... Last, both counsel

- 11 -

stipulated that [Appellant] was prohibited from possessing a firearm under Section 6105.

For these reasons, there is sufficient evidence to sustain the conviction under 6105. For similar reasons, there is also sufficient evidence to support [Appellant's] convictions under Section 6106 and 6108, *i.e.*, [Appellant] was on a public street in Philadelphia when Thompson observed [Appellant] possess a firearm without a license.

Trial Court Opinion, 1/2/14 at 8-9. Again, we find no error in the trial court's determination.

Appellant next argues that the verdict was against the weight of the evidence. Our scrutiny of whether a verdict is against the weight of the evidence is governed by the principles set forth in **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citations omitted):

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

In his weight of the evidence claim, Appellant challenges the credibility of Mr. Thompson. Appellant's Brief at 27-29. Specifically, Appellant argues that Mr. Thompson was motivated to testify in the hope of securing a favorable outcome in his own criminal proceedings, and additionally, that it

was possible that Mr. Thompson had been smoking marijuana at the time he implicated Appellant in the shooting of Gwendolyn Knox. *Id*.

"Where issues of credibility and weight are concerned, it is not the function of an appellate court to substitute its judgment for that of the trial court. A new trial is warranted on a challenge to the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. Furthermore, issues of credibility are left to the trier of fact; the jury is free to accept all, part, or none of the witness testimony." *Commonwealth v. Russell*, 665 A.2d 1239, 1246-1247 (Pa. Super. 1995) (citations omitted). Here, the jury was informed that Mr. Thompson was arrested on December 23, 2011, and was aware that he was charged with possession of marijuana and carrying a firearm without a license. N.T., 11/7/12, at 66. Moreover, Mr. Thompson was subjected to extensive cross-examination by Appellant in an effort to expose any improper motives regarding his providing testimony in exchange for favorable treatment in his own criminal proceeding. N.T., 11/8/12, at 15-55. However, "[q]uestions concerning improper motive go to the credibility of the witnesses." *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citations omitted). The jury, which, was free to believe all, some or none of the evidence, found credible Mr. Thompson's testimony that Appellant was the shooter, notwithstanding Mr. Thompson's admission that he smoked marijuana and that he hoped for more favorable treatment in his own criminal proceeding as a result of his testimony. "An appellate court cannot

substitute its judgment for that of the jury on issues of credibility." *Id*. Given the foregoing, we conclude that the trial court did not abuse its discretion in rejecting Appellant's challenge to the weight of the evidence.

In his third issue, Appellant argues that the trial court abused its discretion when it sentenced him to 25 to 50 years of imprisonment. A challenge to the discretionary aspects of a sentence is not appealable as of right. Rather, Appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257 (Pa. Super. 2004).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013) (citations omitted).

Appellant has preserved his claim by filing a post-sentence motion and timely notice of appeal. Appellant has additionally included in his brief a concise statement pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at

29-30. Therefore, we proceed to determine whether Appellant has raised a substantial question for our review.

Appellant argues that in imposing a sentence of 25 to 50 years of imprisonment, the trial court failed to appropriately consider the statutory factors set forth in 42 Pa.C.S.A. § 9781(d), and the sentencing standards outlined in 42 Pa.C.S.A. § 9721(b). Specifically, Appellant claims that the trial court failed to consider Appellant's history, and in particular the fact that his only other violent offense occurred in 2003, almost 9 years prior to the instant case. Accordingly, Appellant asserts that the sentence was excessive.

"[A]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question whereas a statement that the court failed to consider facts of record, though necessarily encompassing the factors of § 9721, has been rejected." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1266 (Pa. Super. 2014) *quoting* *Commonwealth v. Dodge*, 77 A.3d 1263, 1272 n. 8 (Pa. Super. 2013). While Appellant frames his argument by stating that the sentencing court failed to consider certain statutory factors, in substance Appellant asserts the court failed to appropriately weigh mitigating facts of record, in particular that Appellant did not have a significant criminal record for violent offenses. Such claims that the trial court failed to consider facts of record do

not constitute a substantial question. Therefore, we deny Appellant's discretionary aspects claim.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2014